463 P.2d 287

CAMERON SALES, INC., a corporation, Plaintiff-Respondent,

v.

Lorin F. KLEMISH, Defendant,

Cassia National Bank, a corporation, and Co-op Supply Association, Inc., a corporation, Defendants-Appellants.

No. 10354.

Supreme Court of Idaho.

Jan. 2, 1970.

452

Nielson, Nielson & Nielson, Burley, for appellants.

Goodman & Duff, Rupert, for respondent.

Church, Church & Snow, Burley, for defendant.

McFADDEN, Chief Justice.

This appeal involves the division of $4,393.27, proceeds of a grain crop, and arises out of a dispute as to the priority between a claimed farm laborer's lien asserted by Cameron Sales, Inc., the plaintiff-respondent, a crop mortgage held by the defendant-appellant, Co-op Supply Association, Inc. (hereinafter referred to as Co-op Supply), and a crop and chattel mortgage held by defendant-appellant Cassia National Bank (referred to herein as the bank).

On June 14, 1967 Lorin Klemish, a defendant in default in this action, mortgaged his interest in a grain crop to the Co-op Supply, to secure a $8,700 line of

credit against which he would be entitled to draw for farm supplies, including fertilizer, seed and fuels. This mortgage was recorded on June 15, 1967, and Klemish subsequently drew $6,414 in supplies under this mortgage. Klemish also mortgaged his interest in the same grain crop, along with his interest in hay and beet crops and thirty head of white face calves with increase, to the Cassia National Bank as security for a $2,500 cash advance. Later as provided by the mortgage, the bank advanced an additional $400 secured by the same mortgage. This mortgage to the bank, dated July 31, 1967, was recorded August 2, 1967. Although it was subsequent to the Co-op Supply Mortgage, the Co-op Supply had previously agreed to subordinate its prior first mortgage to the lien of the $2,500 advanced by the bank, but not as to the $400 later advanced by the bank.

Respondent Cameron Sales filed its action claiming a lien in the amount of $2,000 against the proceeds of the grain crop arising out of the following transaction with defendant Klemish. In 1965 Cameron Sales sold to Mr. Klemish an International Harvester grain combine on a conditional sale contract. Klemish, having paid a total of $2,500 toward the purchase of this machine, defaulted on payments in 1967 and the combine was repossessed by the respondent, who held it for resale from the spring of 1967 until August of that year. In August Klemish contacted the respondent regarding use of the combine to harvest his 1967 grain crop which was mortgaged to the two appellants.

Klemish and the respondent entered into a written agreement, which they called a "Custom Harvest Agreement," under the terms of which respondent returned the combine to Klemish to harvest the grain crop and Klemish agreed to pay to the respondent $2,000 on or before September 20, 1967. The written agreement also stated that

"The Employer [Klemish] understands that there will be a lien upon said crop for the costs and expenses incurred in this harvest agreement and said Corporation [respondent] may file said lien at any time it deems itself insecure hereunder."

The agreement also provided that Klemish would pay all repair costs and furnish the gas and oil for the combine. Although the agreement provided that either party could furnish the operator of the machine, Klemish actually operated the machine himself.

The day following execution of the "Custom Harvest Agreement" by Cameron Sales and Klemish, Cameron Sales executed an "Option Agreement" to Klemish, giving him an option to purchase the self-propelled combine for $4,500 with the option to be exercised by paying $2,000 with 6% interest on September 20, and the balance with interest on October 1, 1968. If the September 20, 1967 payment was not made, the option terminated at that date.

Klemish used the combine to harvest 180 acres of grain, whereupon the respondent immediately filed a farm laborer's lien upon the grain for $2,000 plus $25 lien costs. Klemish then sold the grain to Union Seed Co. for $4,393.27, paid by check, the subject of this litigation, which check was made payable to Klemish, respondent, and the two appellants.

The parties could not agree upon a distribution of the grain proceeds. A meeting was held on January 13, 1968 at the office of Norman H. Nielson, counsel for both the Co-op Supply and the bank, to discuss the problem. The meeting was attended by Mr. Cameron and his counsel, Mr. Klemish, Mr. Kruse, manager of the Co-op Supply, and Mr. Nielson. As concerns this meeting, the trial court found:

"At this meeting it was agreed that plaintiff [Cameron Sales] should have the first $2,000.00 of the grain proceeds, in return for which defendant [appel-

·Jlant] ·Co-op Supply Assn. Inc. would, · and ·did, receive Klemish's assignment of · the cattle contract (to the extent of 50 head· óf cattle) as security for Klemish's· indebtedness to it.· · Klemish endorsed and turned over the grain proceeds check; no one else has endorsed the check to this day."

/ On February .23, 1968, Cameron Sales filed the present action claiming a farm laborer's lien by virtue of the custom harvest agreement made between Klemish and the respondent. Nothing further occurred until June 1968 at which time Cameron Sales again repossessed the self-propelled combine from Klemish ··and sold it on July 23, 1968 for an undisclosed sum. On August 29, 1968, appellants answered the complaint, and the case proceeded to trial.

Following trial, the court entered judgment for Cameron Sales in the amount of $2,000, not on the basis of ·the farm laborer's lién, · but rather on the ·ground that all parties had made a :compromise and settlement of the claim, which was adequately supported by consideration and enforceable. The court specifically found against respondent Cameron Sales on its theory of foreclosing a farm laborer's lien. The Co-op Supply and the bank have appealed to this court.

No cross-appeal was taken as to the trial court's ruling that I.C. § 45–301 (which limits the right to a farm laborer's lien to a "person who does any labor on a farm" in harvesting crops) was not applicable here for the reason that Cameron Sales did·not do any labor on the crop.

Both appellants, Co-op Supply and the bank, contend that this determination should end the inquiry since the instant action was initiated on the theory that Cameron Sales was entitled to a farm laborer's lien. They contend that the trial court erred in overruling their objection to testimony pertaining to the January 13, 1968 meeting, and, further, that the trial court·erred in allowing Cameron Sales, at the close of all evidence, to amend the pleadings to conform to the proof to show the existence of a compromise and settlement.

■ The rule is well established that a trial court has wide discretion in permitting amendments of pleadings at any stage of the proceedings to conform to the proof. Even prior to adoption of Idaho Rules of Civil Procedure, Idaho recognized liberality in this regard. See Pennsylvania-Coeur D'Alene Mining Co. v. Gallagher, 19 Idaho 101, 112 P. 1044 (1910); Gaskill v. Jacobs, 38 Idaho 795, 225 P. 499 (1924). I.R.C.P. 15(b) states in pertinent part that

"If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

■ At the trial both appellants were represented by the same counsel, even though their interests were opposed to each other by reason of their different interests in the check representing the proceeds of the grain crop. Appellants objected to the admission of any evidence relating to the January 13, 1968 meeting. The record, however, fails to show any prejudice of such nature as to require a reversal in that regard. The record reflects that counsel representing both appellants was present at the meeting, which was held in his office. At that meeting he purportedly was representing both parties. The record fails to reflect that any request was made for a continuance of the trial in order to better prepare a defense to meet this issue presented by this evidence of a compromise.

■ The appellants argue that the trial court erred in allowing the respondent at the close of the evidence to amend his complaint to allege a compromise agreement because such amendment, they contend, introduced a new cause of action. I.R.C.P. 15(b) does not bar amendments which change the cause of action or theory of the case. Moore states that

"Rule 15(b) has rejected any concept that such amendments are barred if they result in a change of the plaintiff's 'cause of action.' Rule 15(b) does not even limit the amendment to the transaction or occurrence set forth in the pleadings; the only apparent limitation is that the court have jurisdiction over the matter tried, although as a matter of practice issues tried by implied or express consent ordinarily do arise from the same general set of facts set forth in the complaint. * * * The fact that this involves a change in the nature of the cause of action, or the legal theory of the action, is immaterial so long as the opposing party has not been prejudiced in presenting his case."

3 Moore's Federal Practice, ¶ 15.13[2], pp. 984–985 (2d ed. 1968).

See also Reynolds v. Continental Mortgage Co., 85 Idaho 172, 185, 377 P.2d 134 (1962); Hodge v. Borden, 91 Idaho 125, 417 P.2d 75 (1966).

I.R.C.P. 15(c) provides:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

Appellant's objection to the admission of exhibits and testimony concerning the January 13, 1968 meeting was directed solely to the competency and relevancy of the evidence as it applied to the issue before the court, i. e., whether or not there was a lien in favor of Cameron Sales. After the trial court determined to allow the

amendment of the pleadings, under the provisions of I.R.C.P. 15(c), such amendment would relate back and the relevancy to the issues under the amended pleading becomes apparent. It is our conclusion that the trial court did not err in granting the motion to amend.

■ The appellants also contend that, in any event, there was no compromise or settlement as between the parties here because the parties never intended any such settlement and that there is no consideration to support such settlement. It should be noted that the trial court did find there was a compromise and settlement reached by the parties and that it was supported by adequate consideration.

In Muncey v. Children's Home Finding & Aid Society, 84 Idaho 147, 369 P.2d 586 (1962), this court stated:

"It is generally recognized that an attorney has '* * * the general implied or apparent authority to enter into or make such agreements or stipulations, with respect to procedural or remedial matters, as appear, in the progress of the cause, to be necessary or expedient for the advancement of his client's interest or to accomplishment of the purpose for which the attorney is employed.' 7 C.J.S. Attorney and Client § 100, p. 917. Yet it is well settled that '* * * The implied authority of an attorney ordinarily does not extend to the doing of acts which will result in the surrender or giving up any substantial right of the client. * * *' 7 C.J.S. Attorney and Client § 79, p. 897." (at 151–152, 369 P.2d at 588)

See also: Evans v. Power County, 50 Idaho 690, 1 P.2d 614 (1931); Storey v. United States Fidelity & Guaranty Co., 32 Idaho 388, 183 P. 990 (1919).

■■ Here there was no showing that the attorney had the actual authority to compromise or settle the claim on behalf of the bank. On the contrary, Mr. Harward testified at the trial that as representative of the bank in this matter he did not

give Mr. Nielson any authority to compromise the claim. Nor does it appear that the bank later ratified its attorney's actions. There was no showing that the bank had knowledge of the unexecuted compromise agreement and Mr. Nielson was not called to testify that he advised the bank of the compromise. The respondent's argument, then, that the bank stood by while others acted in reliance upon the compromise and should now be estopped from denying its existence is not well founded. Ratification by conduct cannot be inferred in the absence of any showing that the client had knowledge of its attorney's action. Storey v. United States Fidelity & Guaranty Co., supra. It is our conclusion that the appellant bank was not bound by any compromise and settlement and that the trial court was in error in holding that it had waived its mortgage security in favor of Cameron Sales.

However, insofar as appellant Co-op Supply is concerned, the trial court found

"Around the first of August, 1967 Klemish came to plaintiff [Cameron Sales] to obtain the services of the combine to harvest the 1967 grain crop. Plaintiff advised Ralph Kruse, manager of Co-op Supply Assn. Inc., of the proposed harvest arrangement, and it was understood by them that harvest would be necessary to realize on the grain crop."

This finding is sustained by competent evidence. And the court further stated:

"Plaintiff furnished a machine in which it had a substantial, if not full, interest, for the harvest of the mortgaged grain. Defendant Co-op Supply Assn. Inc. had a prior knowledge of, and acquiesced in, the proposal to furnish the machine for said purposes."

At the time of the January 1968 meeting, Cameron Sales had an agreement with Klemish that $2,000 was to be paid for use of the self-propelled combine. This agreement also provided: "That there will be a lien upon said crop for the costs and expenses incurred in this harvest agreement * * *," Klemish, who defaulted in this action never contested the validity of this agreement. The Co-op Supply at the January 1968 meeting agreed that Cameron Sales should have its $2,000 out of the $4,393.27, and that Klemish, to further secure Co-op Supply, would execute an assignment of his interest in some fifty head of cattle, in which Klemish had an interest by reason of a cattle feeding agreement with one Newcomb. Klemish endorsed the grain check and executed the security instrument to Co-op Supply, which agreement was recorded by Co-op Supply's counsel on January 31, 1968. There is no question that Co-op Supply was a party to this agreement, the manager being present and represented by its attorney, Mr. Nielson. The agreement was adequately supported by consideration in that in exchange for Co-op Supply's releasing its rights to the grain proceeds, Klemish gave Co-op Supply additional security in its cattle. Thus insofar as Co-op Supply is concerned, Cameron Sales is entitled to its share of the proceeds of the grain check, subsequent to satisfaction of the bank's interest therein. The judgment of the trial court insofar as the appellant Co-op Supply is concerned, thus, must be affirmed.

As previously pointed out, however, that portion of the judgment of the trial court which held that appellant bank was bound by the compromise agreement was in error and must be reversed. However, as the trial court stated:

"Nevertheless, this being an equity case, the evidence being before the Court and the court can proceed to dispose of the case as it was made by the parties and the proof."

See: Anderson v. Whipple, 71 Idaho 112, 122, 227 P.2d 351, 357 (1951); Bethlahmy v. Bechtel, 91 Idaho 55, 68, 415 P.2d 698 (1966), and cases therein cited. In the instant case the record is undisputed that appellant bank not only had as security for the sums advanced to Klemish, a mortgage on Klemish's interest in the crop of

grain, but also on his interest in certain other crops, as well as on "30 head calves White face and Lessee's share of all increase of calves." This presents an issue which the trial court should determine, and that is whether appellant bank should first be required to exhaust its other security before resorting to its interest in the grain proceeds.

It has been held that where a junior lienor has a security interest in certain property and a senior lienor has a security interest in the same property and also in other property, a court of equity may compel the senior lienor to first resort to the other property in satisfaction of its claim. American Nat. Ins. Co. v. Vine-Wood Realty Co., 414 Pa. 263, 199 A.2d 449 (1964); Johnson v. Lentini, 66 N.J.Super. 398, 169 A.2d 208 (1961); Equitable Sav. & Loan Ass'n v. 6322 20th Ave. Corp., Sup., 235 N.Y.S.2d 394 (N.Y. Sup.Ct.1962); Victor Gruen Associates

Inc. v. Glass, 338 F.2d 826 (9th Cir. 1964); Rundquist v. O'Leary, 184 Kan. 496, 337 P.2d 1017 (1959).

Thus the judgment of the trial court insofar as it holds that appellant Co-op Supply Association, Inc., was a party to the settlement and has waived its lien on the proceeds of the sale of the mortgaged grain is affirmed. That portion of the judgment which holds that appellant Cassia National Bank was a party to the settlement agreement is reversed, and the cause is remanded for the trial court to determine whether the bank should be required first to resort to its other security before it is awarded payment out of the crop proceeds which would diminish respondent Cameron Sales, Inc.'s interest in the check representing proceeds of sale of the mortgaged crop. No costs allowed.

McQUADE, DONALDSON, SHEPARD and SPEAR, JJ., concur.