92 P.3d 1076

Linda CABALLERO, Gary Haar, Dana Thorne, Tom Kulm, and the Idaho Department of Health and Welfare, Plaintiffs–Respondents,

v.

David WIKSE, Defendant–Appellant.

No. 27995.

Supreme Court of Idaho, Boise, April 2003 Term.

April 22, 2004.

Huntley Park LLP, Boise, for appellant. Chris Kronberg argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondents. James D. Carlson argued.

## SUBSTITUTE OPINION

### THE COURT'S PRIOR

### OPINION DATED JULY 23, 2003 IS HEREBY WITHDRAWN

SCHROEDER, Justice.

Respondents filed suit seeking specific performance of an alleged oral settlement agreement. The respondents alleged that the appellant's attorney entered into a binding settlement agreement on behalf of the appellant. The appellant contended his attorney did not have authority to enter into the agreement and argued that the agreement was otherwise unenforceable. After a court-trial, the district court entered judgment in favor of the respondents. Appellant timely filed this appeal. The judgment of the district court is affirmed.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

David Wikse (Wikse) was an employee with the Idaho Department of Health and Welfare (State). The State terminated Wikse's employment on August 15, 1996. As a classified employee he was terminable only for cause.

Wikse appealed the State's decision to the Idaho Personnel Commission (IPC) which found that the State lacked cause to terminate Wikse. The State sought judicial review of the IPC decision in *Dept. of Health and Welfare v. David Wikse.* By August 13, 1998, Wikse had filed two lawsuits against the State and its officials for wrongful termination: (1) *David Wikse v. Gary Harr, Dana Thorne, and Tom Klum;* and (2) *David Wikse v. Linda Caballero, Gary Harr and the Idaho Department of Health & Welfare.* The parties to the three cases agreed to

mediate with D. Duff McKee (McKee) in an attempt to reach a global settlement.

Jim Jones (Jones), Wikse's attorney, the attorneys for the State and the individual defendants met with McKee on November 9, 1998, to go over the "ground rules" for the mediation. One rule was that each party would have someone with settlement authority in attendance throughout the mediation.

The mediation session began at 9:00 a.m. on December 4, 1998. The attendees included: McKee; Wikse; Jones; Jean Goodenough (Goodenough), a deputy attorney general for the Department of Human Services; Merlyn Clark (Clark), a special deputy attorney general retained by the State to handle the Wikse-related litigation; Dean Christian, a deputy attorney general specializing in employment litigation; and Linda Caballero (Caballero), director of the Department of Health and Welfare. The attendees met to begin the mediation process and McKee went over the ground rules again. After preliminary discussions to identify the issues, Wikse and Jones went to a separate room. McKee shuttled back and forth between the rooms with proposals and counter-proposals.

By noon the parties had reached an accord regarding the non-monetary issues: (1) Wikse would not be reinstated; instead, the State would pay money damages; (2) the State would write a letter of exoneration for Wikse; (3) the State would credit Wikse with sufficient additional service to vest in the Public Employee Retirement System of Idaho (PERSI). The parties then began negotiating a financial settlement. Wikse and Jones had discussed a minimum settlement of $227,000, of which Wikse would receive $170,000 and Jones would take $57,000 in attorney fees. Jones told McKee that their opening offer for a monetary settlement was $450,000. McKee transmitted the offer to the State which returned a counter proposal of $150,000.

The parties continued bargaining throughout the afternoon. Sometime after 4:00 p.m. the parties neared a monetary settlement. Their positions were between $10,000 and $20,000 apart. During this time, Wikse left the room where he and Jones were discussing proposals. Wikse entered the room in which the State's attorneys and Caballero sat, the same room in which the parties met at 9:00 a.m. Wikse picked up his briefcase and, possibly, a coat and left the room. Thereafter, the State proposed a monetary settlement of $205,000, and Jones countered with an offer of $210,000. The State agreed to split the difference and offered $208,000. Jones told the State, through McKee, that $208,000 was an agreeable figure. Jones then looked for Wikse but could not find him.

Jones and the State's attorneys met in a courtroom. The State's attorneys expressed concern over Wikse's absence. Nonetheless, the discussion of the specifics of the settlement continued, e.g., how many checks the State would cut to pay the settlement and to whom the checks would be payable, how PERSI contributions would be allocated between Wikse and the State, and who would draft the settlement agreement and stipulations to dismiss the three suits at issue. Jones and the State's attorneys agreed that Clark would draft the paperwork.

Clark drafted the documentation and had the State cut the checks necessary to complete the settlement agreement. Shortly after December 4, 1998, Jones advised Wikse of the terms at which the State and Jones had arrived. Wikse wanted an accountant and another attorney to review the terms. Jones called Clark and indicated that Wikse was concerned about the terms. On December 17, 1998, Clark forwarded the settlement documents to Jones. On January 5, 1999, Jones wrote Clark. The letter stated in part, "[Wikse] now tells me that he is unable to settle on the mediation session terms. He wishes to proceed with the ongoing litigation.... [He] tells me that he does wish to be reinstated by the [State] and regrets any inconvenience caused by the delay while he considered the terms of the settlement."

The State took the position that a valid oral settlement agreement had been reached on December 4, 1998. Consequently, the State and individual officials, Caballero, Gary Harr, Dana Thorne, and Tom Klum (collectively respondents), filed this action against Wikse seeking specific performance of the alleged oral settlement agreement.

The case was tried to the court without a jury. Wikse, Jones, Christian, Clark, Goodenough, and McKee testified at the trial. On October 12, 2001, the court entered a memorandum decision and order. The court found that when Wikse left, he said to Jones "words to the effect 'I'm leaving, Jim, you handle it.' " The court concluded that Wikse's departure and words granted actual authority, both express and implied, to Jones to compromise the cases. The court further found that, even if Jones lacked actual authority to settle the cases on Wikse's behalf, Wikse vested Jones with apparent authority. The district court also found that there was sufficient agreement and consideration to give rise to a valid settlement agreement. Therefore, the court ordered specific performance of the agreement on the terms reached by Jones and the State's attorneys at the mediation.

Wikse timely filed this appeal.

## II.

### STANDARD OF REVIEW

■ This Court affirms a district court's findings of fact unless the findings are "clearly erroneous." I.R.C.P. 52(a). Findings "based upon substantial and competent, although conflicting, evidence will not be disturbed on appeal." *Bolger v. Lance*, 137 Idaho 792, 794, 53 P.3d 1211, 1213 (2002) (citing *DeChambeau v. Estate of Smith*, 132 Idaho 568, 571, 976 P.2d 922, 925 (1999)). This Court exercises free review over matters of law. *Id.* (citing *Bouten Constr. Co. v. H.F. Magnuson Co.*, 133 Idaho 756, 760, 992 P.2d 751, 755 (1999)).

## III.

### THERE IS SUBSTANTIAL COMPETENT EVIDENCE TO SUPPORT THE DISTRICT COURT'S DECISION THAT JONES HAD ACTUAL AUTHORITY TO SETTLE THE CLAIM

**A. An Attorney Must Have Expressed Or Implied Actual Authority To Compromise A Client's Claim; Apparent Authority Is Insufficient.**

■ "The relationship between an attorney and client is one of agency" in which the client is the principal and the attorney is the agent. *Muncey v. Children's Home Finding and Aid Soc. of Lewiston*, 84 Idaho 147, 151, 369 P.2d 586, 588 (1962). An agent may bind a principal if the agent has actual authority. Actual authority is that authority a principal expressly grants to an agent or impliedly confers on an agent because it is usual, necessary, and proper to achieve the object of the express authority granted to the agent. *Bailey v. Ness*, 109 Idaho 495, 497, 708 P.2d 900, 902 (1985) (citing *Clark v. Gneiting*, 95 Idaho 10, 12, 501 P.2d 278, 280 (1972)). Even in the absence of actual authority, an agent generally may bind a principal if the agent is cloaked with apparent authority. Apparent authority arises when "the principal 'voluntarily places an agent in such a position that a person of ordinary prudence, conversant with the business usages and the nature of a particular business, is justified in believing that the agent is acting pursuant to existing authority.' " *Id.* (quoting *Clark*, 95 Idaho at 12, 501 P.2d at 280). However, the doctrine of apparent authority is inapplicable if the action taken by the agent is compromising the principal's claim. Rather, an agent needs actual authority, express or implied actual authority, to compromise a principal's claim. *See Muniz v. Schrader*, 115 Idaho 497, 500, 767 P.2d 1272, 1275 (Ct.App.1989) (citing *Cameron Sales, Inc. v. Klemish*, 93 Idaho 451, 463 P.2d 287 (1970)); *see also Storey v. U.S. Fidelity & Guar. Co. of Baltimore, Maryland*, 32 Idaho 388, 392, 183 P. 990, 991 (1919). Jones could only bind Wikse to a settlement agreement if facts support the legal conclusion that Jones had actual authority to do so.

**B. The District Court Did Not Err By Finding That Jones Had Authority To Compromise Wikse's Claims.**

■ Whether express or implied authority exists generally presents a question of fact. *Muniz*, 115 Idaho at 500, 767 P.2d at 1275 (citing *Bevercombe v. Denney & Co.*, 40 Idaho 34, 42, 231 P. 427, 430 (1924)). The district court stated, in pertinent part:

Under all the circumstances of this case (including that the defendant had initiated

the mediation process and understood the groundrules [sic] of mediation set by Judge McKee, which further included that someone with settlement authority had to remain present throughout mediation, that the defendant left the room with Jim Jones after saying "I'm leaving, Jim, you handle it"), the defendant conferred both actual express authority and actual implied authority to compromise and settle all of [Wikse's] claims.

In *Muniz,* the Idaho Court of Appeals described express authority and evidence necessary to prove express authority:

Express authority refers to that authority which the principal has explicitly granted the agent to act in the principal's name. The declarations of an alleged agent, standing alone, are insufficient to prove that the principal has conferred such authority. However, the authority of the agent to act for and on behalf of his principal does not have to be established by direct or positive proof, but may be inferred from dealings, circumstances, acts and conduct. Furthermore, in a case where the evidence is conflicting, or different reasonable interpretations may be drawn from the evidence, the question of the nature and extent of the authority of an agent is one of fact to be determined by the trier of fact.

*Id.* In this matter, the district court points to two primary facts to show that Jones had express authority: (1) Wikse left before the mediation ended while the ground rules required that someone with settlement authority be present throughout the mediation; and (2) Wikse stated something to the effect of, "I'm leaving, [Jones], you handle it."

Wikse knew that a person with authority to settle the claim had to be present throughout the mediation. He did not disavow his acceptance of this condition. He left Jones under this condition. A reasonable inference could be drawn by the district court that Wikse left Jones with actual authority to settle the claim.

The district court also found that Wikse made a statement to Jones to the effect that "you handle it" or "you take care of it." Wikse testified that, "I can't recall exactly

what I said when I left but it was something to the effect that Mr. Jones, my lawyer, could respond to the respondents' latest counterproposal." This does not amount to a disavowal of the conditions of the mediation and supports a factual inference that he left Jones with actual authority to settle the claim. Other indirect evidence supports this finding:

- McKee's testimony that he is confident that he would have terminated the mediation session if Jones did not assure him that Jones had authority to settle the matter. McKee is confident that he would have confirmed this with Jones.
- Jones testified that McKee told Jones that Wikse had told Jones to "handle it" before Wikse left.
- Clark testified that Jones stated to him that Wikse had told Jones to "take care of it."
- Christian testified that Jones nodded while McKee stated "Mr. Wikse left shortly before the last offer, but on his way out the door he said 'you settle it Jim, I'm leaving.' So Jim's finish up [sic] or to settle this case."

The representations of the agent, Jones, alone are insufficient to prove that Wikse expressly granted Jones actual authority. *See id.* However, the representations made by Jones and McKee, in combination with inferences "from dealings, circumstances, acts and conduct," constitute substantial, competent evidence supporting a finding of express actual authority.

## IV.

## CONCLUSION

The decision of the district court is affirmed. The respondents are awarded costs.

Chief Justice TROUT, Justices EISMANN and BURDICK concur.

Justice KIDWELL dissents without opinion.