# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46595

PRIMERA BEEF, LLC, a Texas Limited Liability Company,

    Plaintiff-Appellant,

v.

ALLAN WARD,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)

Boise, November 2019 Term

Opinion filed: February 3, 2020

Karel A. Lehrman, Clerk

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Cassia County, Michael P. Tribe, District Judge.

The judgment of the district court is affirmed.

Williams Meservy & Larsen, LLP, Jerome, for Appellant. Kimberly L. Williams argued.

Elam & Burke, PA, Boise, for Respondent. David T. Krueck argued.

---

MOELLER, Justice

Primera Beef, LLC (Primera Beef) appeals the Cassia County district court's grant of summary judgment in favor of Allan Ward. In the proceedings below, Primera Beef alleged that Ward breached the confidentiality provision of a settlement agreement between him and Primera Beef when Ward's attorney disclosed the terms of the agreement to the prosecutor in a related criminal action. Ward moved for summary judgment, arguing that he was not liable for his attorney's actions because his attorney was not acting within the scope of his authority when he disclosed the terms. The district court agreed. For the reasons stated below, we affirm the decision of the district court.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On October 3, 2016, Primera Beef filed a lawsuit against Ward and his company, Little Moo Cattle Company, LLC (Little Moo), relating to the purchase and sale of Wagyu calves

procured by Little Moo and purchased by Primera Beef. Ward and Little Moo retained attorney Keith Roark to represent them in the lawsuit.

Approximately one month later, the parties entered into a Settlement Agreement and Mutual Release (Settlement Agreement) to resolve the lawsuit. The Settlement Agreement included the following confidentiality provision:

> Except as otherwise required by this Agreement, law, or order of a court of competent jurisdiction, the parties shall keep the terms of this Agreement strictly confidential. The parties further agree that neither shall hereafter disparage the name or character of the other in any way. Each party agrees that it will not make any negative or derogatory comments to the media, to their colleagues, or to any members of the public concerning the other party, or any of their respective past or present officers, members or directors. The remedy for any breach of this provision shall be the recovery of liquidated damages incurred as a result of such breach at the rate of $25,000.00 per occurrence.[1]

The Settlement Agreement was signed by Gary D. Slette (attorney for Primera Beef), Dustin Dean (on behalf of Primera Beef), Ward (individually and for Little Moo), and Roark (attorney for Ward and Little Moo). Thereafter, the civil lawsuit was dismissed.

Meanwhile, a criminal action was pending against Ward in Cassia County on charges related to the same facts giving rise to the civil lawsuit. Roark, Ward's attorney in the civil lawsuit, also represented Ward in the criminal action. At some point after the civil lawsuit had been dismissed, Ward asked Roark to determine "whether it would be possible to also have the criminal matter dismissed." Roark then sent a letter to the Cassia County prosecuting attorney, McCord Larsen (Larsen), requesting that he dismiss the pending criminal action since the civil lawsuit had been settled and dismissed. In support of his request, Roark mentioned, in detail, some of the terms of the Settlement Agreement.

On March 13, 2017, Primera Beef filed a new complaint against Ward, alleging that he "breached the Settlement Agreement by his agent's disclosure of the material terms of the Settlement Agreement in violation of the confidentiality provision." Primera Beef learned of the disclosure through Slette, its attorney in the settled civil lawsuit. Apparently Slette had regular telephone conversations with Larsen regarding the pending criminal action. Larsen would discuss with Slette what he perceived were the "mitigating factors in the criminal case," which is

---

[1] Although Primera Beef filed the Settlement Agreement under seal before the district court, Ward has cited excerpts from the Settlement Agreement in his own briefing, both on appeal and below, without objection. Therefore, the Court finds that those portions of the Settlement Agreement are now a public record and will be quoted from freely in this Opinion.

when Larsen "began to recite in an almost verbatim fashion the terms of the confidential Settlement Agreement." Larsen informed Slette that he came to possess this information through Roark.

In his answer to the complaint, Ward denied that "Roark was acting as his agent in regard to the civil case" and denied that "he had any knowledge of Mr. Roark's contacts with Mr. Larsen or authorized the same." Accordingly, Ward moved for summary judgment, requesting that the district court dismiss the action because "there is no genuine dispute that [he] did not breach the terms of the Settlement Agreement. Neither he, nor anyone acting with his authority to do so, disclosed the terms of the Settlement Agreement to any person." Thus, Ward claimed that he "cannot be held liable for a disclosure of such terms that he neither made nor authorized." Ward also asserted that the liquidated damages provision in the Settlement Agreement was unenforceable.[2]

On July 20, 2018, the district court entered its Memorandum Decision Granting Defendant's Motion for Summary Judgment. The court granted summary judgment in Ward's favor because it found that Roark acted without express authority, implied authority, or apparent authority when he disclosed the terms of the Settlement Agreement. Regarding implied authority, the district court held:

> Simply because Mr. Roark had been retained and had express authority to represent Ward in the criminal proceedings cannot lead to the legal conclusion that any action taken by Mr. Roark to settle that matter fell within the scope of that express representation or that there was implied authority to take action that could lead to liability for Ward under the Agreement. Instead, Primera must prove that the disclosure of the confidential terms of the Agreement was "necessary, usual, and proper" in the performance of Mr. Roark's duties as Ward's criminal attorney, in order for an action to be maintained under the theory of implied authority. The [c]ourt cannot make such a finding as there is an absence of evidence that such action was necessary, usual, and proper.

On August 21, 2018, Primera Beef filed a motion for reconsideration. After a hearing on the matter, the district court denied the motion.

The district court entered judgment on December 27, 2018, dismissing the action in its entirety. Primera Beef timely appealed from the district court's judgment, Memorandum

---

[2] The district court did not decide the enforceability of the liquidated damages provision because it determined it was unnecessary since it granted summary judgment in Ward's favor.

Decision Granting Defendant's Motion for Summary Judgment, and the Memorandum Decision Denying Plaintiff's Motion for Reconsideration.

## II.    STANDARD OF REVIEW

"Appeals from an order of summary judgment are reviewed de novo, and this Court's standard of review is the same standard applied by the trial court." *Matter of Estate of Smith*, 164 Idaho 457, 467, 432 P.3d 6, 16 (2018). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "The Court is to liberally construe all disputed facts and draw all reasonable inferences from the record in favor of the nonmovant." *Matter of Estate of Smith*, 164 Idaho at 467, 432 P.3d at 16. "The movant carries the burden of proving the absence of a genuine issue of material fact." *Id.* "Summary judgment is appropriate where the nonmoving party bearing the burden of proof fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Mackay v. Four Rivers Packing Co.*, 145 Idaho 408, 410, 179 P.3d 1064, 1066 (2008).

"[W]hen reviewing a trial court's decision to grant or deny a motion for reconsideration, this Court utilizes the same standard of review used by the lower court in deciding the motion for reconsideration." *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012). Therefore, "when reviewing the grant or denial of a motion for reconsideration following the grant of summary judgment, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Id.*

## III.    ANALYSIS

### A. Preliminarily, we hold that Primera Beef did not waive any of its arguments relating to implied authority.

Ward contends that Primera Beef waived all arguments on appeal relating to implied authority because the only type of authority specifically identified in its opening brief is express authority. To support his contention, Ward cites to *PHH Mortgage v. Nickerson*, wherein we explained that if an appellant fails to "assert his assignments of error with particularity and to support his position with sufficient authority, those assignments of error are too indefinite to be heard by this Court." 164 Idaho 33, 39, 423 P.3d 454, 460 (2018). Primera Beef contends that it did not waive any of its arguments relating to implied authority for two reasons: first, the district court's decision is based entirely upon a legal interpretation of the law of implied authority; and

second, its opening brief focuses entirely on the theory of implied authority. We agree with Primera Beef.

Idaho Appellate Rule 35 provides that the arguments of the parties "shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon." I.A.R. 35(a)(6). This Court has refused to consider an appellant's claims "because he has failed to support them with either relevant argument and authority or coherent thought." *Clark v. Cry Baby Foods, LLC*, 155 Idaho 182, 185, 307 P.3d 1208, 1211 (2013) (quoting *Liponis v. Bach*, 149 Idaho 372, 374, 234 P.3d 696, 698 (2010)). As we have explained on several occasions,

> [w]here an appellant fails to assert his assignments of error with particularity and to support his position with sufficient authority, those assignments of error are too indefinite to be heard by the Court. *Randall v. Ganz*, 96 Idaho 785, 788, 537 P.2d 65, 68 (1975). A general attack on the findings and conclusions of the district court, without specific reference to evidentiary or legal errors, is insufficient to preserve an issue. *Michael v. Zehm*, 74 Idaho 442, 445, 263 P.2d 990, 993 (1953). This Court will not search the record on appeal for error. *Suits v. Idaho Bd. of Prof'l Discipline*, 138 Idaho 397, 400, 64 P.3d 323, 326 (2003). Consequently, to the extent that an assignment of error is not argued and supported in compliance with the I.A.R., it is deemed to be waived. *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005).

*Id.* (quoting *Bach v. Bagley*, 148 Idaho 784, 790–91, 229 P.3d 1446, 1152–53 (2010)). Additionally, "if an appellant fails to contest all of the grounds upon which a district court based its grant of summary judgment, the judgment must be affirmed." *Baughman v. Wells Fargo Bank, N.A.*, 162 Idaho 174, 182, 395 P.3d 393, 401 (2017) (quoting *AED, Inc. v. KDC Investments, LLC*, 155 Idaho 159, 164, 307 P.3d 176, 181 (2013)).

Here, Primera Beef has at all times argued that Roark had express authority to represent Ward during the criminal proceedings, which necessarily included communicating with the prosecuting attorney, *i.e.*, an implied authority. For example, in the proceedings below, Ward moved for summary judgment, asserting that the action should be dismissed because "there is no set of facts upon which Primera can prove that Ward ought to be held liable for Mr. Roark's disclosure under any theory of agency recognized under Idaho law." In support of his argument that implied authority did not exist, Ward asserted that "[i]mplied authority refers to that authority 'which is *necessary, usual, and proper* to accomplish or perform' the express authority delegated to the agent by the principal." In opposition, Primera Beef argued that it was "necessary, usual, and proper" for Roark to communicate with the prosecutor's office to achieve

5

the object of Roark's expressly granted authority of representing Ward in the criminal matter. The district court agreed with Ward, holding that Roark acted without express authority, implied authority, or apparent authority when he disclosed the terms of the Settlement Agreement. In response, Primera Beef moved for reconsideration, explaining that merely because something is improper does not excuse the principal from responsibility for that improper action as it remains within the scope of the authority. The district court affirmed its earlier decision, holding that "there is no genuine dispute as to any material fact under either theory of express authority or implied authority and summary judgment is proper." Thus, the issue of implied authority was raised and argued below.

More importantly, Primera Beef continues to make the same arguments on appeal as it did below, including those relating to implied authority, and continues to support its arguments with relevant authority. For example, Primera Beef argues that it was "usual, necessary and proper for Mr. Roark to communicate with the Prosecuting Attorney on behalf of Ward." Primera Beef also argues that "Mr. Roark's duties as attorney for the accused in a criminal matter naturally include communicating with the prosecuting attorney regarding Defendant's criminal matter." Moreover, Primera Beef cites to both the record and relevant authority to support its arguments. Thus, Primera Beef has raised, and supported, the issue of implied authority on appeal as well.

In sum, although Primera Beef does not specifically use the phrase, "implied authority," in its opening brief, the very crux of the issue on appeal is the legal interpretation of implied authority. That is, we are asked to decide whether *improper* conduct by an agent takes the action outside the scope of authority that is "necessary, usual, and proper." By definition, that is a standard that only applies in cases where implied authority is raised; therefore, we cannot conclude that Primera Beef waived the issue on appeal.

**B. We hold that the district court did not err in granting summary judgment for Ward because there is no genuine dispute that Roark lacked authority to reveal the terms of the Settlement Agreement.**

Primera Beef contends that the district court erred in concluding that Roark was not acting within the scope of his authority when he disclosed the terms of the Settlement Agreement because, although disclosing the terms was improper, it was done within the course of Roark's representation of Ward. Ward contends that the district court did not err because it was not

6

"necessary, usual, and proper" for Roark to knowingly violate the terms of his client's ongoing contractual obligations without express permission.

"'The relationship between an attorney and client is one of agency' in which the client is the principal and the attorney is the agent." *Caballero v. Wikse*, 140 Idaho 329, 332, 92 P.3d 1076, 1079 (2004) (quoting *Muncey v. Children's Home Finding and Aid Soc. of Lewiston*, 84 Idaho 147, 151, 369 P.2d 586, 588 (1962)). "An agent may bind a principal if the agent has actual authority. Actual authority is that authority a principal expressly grants to an agent or impliedly confers on an agent because it is usual, necessary, and proper to achieve the object of the express authority granted to the agent." *Id.* "Even in the absence of actual authority, an agent generally may bind a principal if the agent is cloaked with apparent authority." *Id.*[3] "Only acts by the agent that are within the scope of the agency relationship affect the principal's legal liability." *Humphries v. Becker*, 159 Idaho 728, 735, 366 P.3d 1088, 1095 (2016).

Similarly, the Idaho Jury Instructions explain that "[t]he principal is responsible for any act of the agent within the agent's scope of authority." IDJI 6.40.1. In defining the scope of authority, Idaho Jury Instruction 6.43.1 explains that,

> [c]onduct is within the scope of the agent's authority if it occurs while the agent is engaged in the duties that the agent was asked or expected to perform *and* relates to those duties. It is not necessary that a particular act or failure to act be expressly authorized by the principal to bring it within the scope of the agent's authority. Conduct for the benefit of the principal that is incidental to, customarily connected with, or reasonably necessary for the performance of such duties is within the scope of the agent's authority.

(Emphasis added). Thus, we see that a party maintaining that an agent had authority for their actions must satisfy a two-prong analysis: (1) was the agent asked or expected to perform the complained of act, and (2) did the act relate to those duties. In order to "relate to those duties" for purposes of the second prong, the act must be "necessary, usual, and proper." *Caballero*, 140 Idaho at 332, 92 P.3d at 1079.

"This Court has previously viewed the question of whether an agency relationship exists as a question of fact for the jury to determine." *Forbush v. Sagecrest Multi Family Property Owners' Assoc., Inc.*, 162 Idaho 317, 330, 396 P.3d 1199, 1212 (2017) (quoting *Humphries*, 159 Idaho at 735 n.2, 366 P.3d at 1095 n.2). However, "whether a given set of facts are sufficient to constitute an agency relationship is a question of law appropriate for this Court's consideration."

---

[3] Neither party has argued that apparent authority is an applicable theory on appeal.

*Id.* (quoting *Humphries*, 159 Idaho at 735 n. 2, 366 P.3d at 1095 n. 2). Moreover, "[t]he party alleging the existence of an agency relationship carries the burden of proof." *Gissel v. State*, 111 Idaho 725, 729, 727 P.2d 1153, 1157 (1986).

Here, it is undisputed that Ward expressly authorized Roark to represent him in the criminal action thereby making Roark his agent. What is in dispute is whether Ward, by asking his attorney to determine "whether it would be possible to also have the criminal matter dismissed," expressly authorized Roark to reveal the terms of the confidential Settlement Agreement or whether doing so was impliedly necessary to effectuate the express grant of authority. The record supports the district court's conclusion that Ward neither expressly authorized Roark to reveal the terms of the Settlement Agreement nor was it impliedly necessary for Roark to do so in order to carry out his duties as Ward's criminal defense attorney.

First, Ward asserts that he did not ask or authorize Roark to disclose terms of the Settlement Agreement to the prosecuting attorney. Primera Beef does not argue otherwise and has presented no evidence to the contrary. As mentioned above, "[e]xpress authority refers to that authority which the principal has explicitly granted the agent to act in the principal's name." *American West Enterprises, Inc. v. CNH, LLC*, 155 Idaho 746, 753, 316 P.3d 662, 669 (2013) (quoting *Bailey v. Ness*, 109 Idaho 495, 497–98, 708 P.2d 900, 902–03 (1985)). "Express authority is articulated between the parties." *Podolan v. Idaho Legal Aid Servs., Inc.*, 123 Idaho 937, 944, 854 P.2d 280, 287 (Ct. App. 1993). Accordingly, we hold that Ward did not expressly grant Roark authority to reveal the terms of the Settlement Agreement.

The second question remains, then, whether revealing the terms of the Settlement Agreement was "necessary, usual, and proper" to accomplish or perform the express authority. We hold that it was not. As mentioned above, "[i]mplied authority refers to that authority which is *necessary, usual, and proper* to accomplish or perform the express authority delegated to the agent by the principal." *American West Enterprises, Inc.*, 155 Idaho at 753, 316 P.3d at 669 (emphasis added) (quoting *Bailey*, 109 Idaho at 497–98, 708 P.2d at 902–03); *see also* Restatement (Third) of Agency § 2.02 cmt. e (2006) ("An agent's actual authority encompasses acts necessary to accomplish the end the principal has directed that the agent achieve."); IDJI 6.40.3 ("Agency by implied authority exists and applies to those acts by a person that are necessary, usual and proper to accomplish or perform within the express authority given by the principal."). A "[l]ack of actual authority is established by showing either that the agent did not

8

believe, or could not reasonably have believed, that the principal's grant of actual authority encompassed the act in question." Restatement (Third) of Agency § 2.02 cmt. e (2006). "This standard requires that the agent's belief be reasonable, an objective standard, and that the agent actually hold the belief, a subjective standard." *Id.*

"It is presumed that an attorney who is acting or communicating in relation to his representation of a client is acting on behalf of that client and for that client's interests." *Taylor v. McNichols*, 149 Idaho 826, 841, 243 P.3d 642, 657 (2010); *see also Callahan v. Wolfe*, 88 Idaho 444, 452, 400 P.2d 938, 943 (1965) ("The statements of an agent respecting the subject matter of an action and within the scope of his authority are binding upon the principal."); *Aker v. Aker*, 52 Idaho 713, 724, 20 P.2d 796, 800 (1933) ("It is elementary that within the scope of authority the statements of an agent are binding on the principal."). However, as with every presumption, it can be overcome and exceptions can be made. One exception applies to the surrendering of any substantial right of the client:

> It is generally recognized that an attorney has ". . . the general implied or apparent authority to enter into or make such agreements or stipulations, with respect to procedural or remedial matters, as appear, in the progress of the cause, to be necessary or expedient for the advancement of his client's interest or to accomplishment of the purpose for which the attorney is employed." 7 C.J.S. Attorney and Client § 100, p. 917. Yet it is well settled that ". . . [t]he implied authority of an attorney ordinarily does not extend to the doing of acts which will result in the surrender or giving up any substantial right of the client. . . ." 7 C.J.S. Attorney and Client § 79, p. 897.

*Cameron Sales, Inc. v. Klemish*, 93 Idaho 451, 455, 463 P.2d 287, 291 (1970) (quoting *Muncey*, 84 Idaho at 151–52, 369 P.2d at 588–89); *see id.* at 455–56, 463 P.2d at 291–92 (explaining that the appellant bank was not bound by a compromise and settlement that was entered into by its attorney because the bank's attorney lacked actual authority to compromise or settle the claim on behalf of the bank).

Primera Beef argues that improper actions, though not exactly "necessary, usual, and proper," may still be within an agent's scope of authority, citing *King v. H.J. McNeel, Inc.*, 94 Idaho 444, 489 P.2d 1324 (1971), *Thornton v. Budge*, 74 Idaho 103, 257 P.2d 238 (1953), and *Devault v. Steven L. Herndon, A Prof'l Ass'n*, 107 Idaho 1, 684 P.2d 978 (1984) for support. In *King*, the question before this Court was whether a vendor of real estate could be bound by the misrepresentations of its real estate broker regarding the property to be sold. 94 Idaho at 446, 489 P.2d at 1326. We held in the affirmative, explaining that "[r]epresentations as to boundary or

quantity of land have generally been held to be binding upon the principal even though no express authority existed giving the agent authority to make such representations." *Id.* Although *King* does support Primera Beef's general argument that a principal may be liable for an agent's improper actions—or misrepresentations in that case—it cannot be said that *King* created a blanket rule. In support of our holding in *King*, we cited to several secondary sources. *See id.* (citing 57 A.L.R 111 (1928); 58 A.L.R.2d 10 (1958); 4 A.L.R.3d 224 (1965)). That same authority, however, explains that, "[w]hile there are many cases which hold that a real-estate broker or agent may bind his principal by representations as to the character, condition, location, quantity, or title of property, at least under the circumstances considered, there are also a large number of cases taking a contrary view." 58 A.L.R.2d 10. Accordingly, whether an agent's misrepresentations are binding on the principal depends on the subject of the misrepresentation as well as the circumstances surrounding the misrepresentation.

In *Thornton*, the question before this Court was whether the trial court erred in submitting the question of agency to the jury instead of finding as a matter of law that the relationship was that of host and guest. 74 Idaho at 105–06, 257 P.2d at 239–40. In that case, Thornton, the owner of an automobile garage, was informed by one of his workmen that parts were needed for a repair. *Id.* at 105, 257 P.2d at 239. Henderson, an acquaintance of Thornton, was in the garage at the time and offered to drive Thornton to pick up the parts. *Id.* On the way back, a collision occurred. *Id.* at 106, 257 P.2d at 240. The trial court submitted the question of agency to the jury. *Id.* at 108, 257 P.2d at 242. On appeal, Thornton argued that the trial court should have instructed the jury as a matter of law that the relationship between Thornton and Henderson was that of guest and host. *Id.* at 108, 257 P.2d at 241. We disagreed, holding:

> [i]f it be thought that there was no conflict in the evidence, then it was the duty of the court to instruct the jury that the relationship was that of principal and agent. If the existence or non-existence of agency was a disputed question of fact it was for the jury.

*Id.* We did not have the opportunity to decide whether the relationship between Thornton and Henderson was that of principal and agent as that question was not before us; however, in holding that Thornton was not prejudiced by submitting the question of agency to the jury, we went through the facts of a "parallel" case, *see Georgeson v. Nielsen*, 252 N.W. 576 (Wis. 1934), wherein the Wisconsin Supreme Court held that the relationship between the two individuals was that of agent and principal, not host and guest, thereby implying that the same type of

10

relationship existed between Thornton and Henderson. Nevertheless, *Thornton* still provides little support for Primera Beef because, had the facts here been as they were in *Thornton*, the outcome would have been the opposite. That is, had Roark been driving to the courthouse to represent Ward in a hearing and injured someone along the way, Ward would not be liable to the third party even though Roark was driving to the courthouse solely for the purpose of representing Ward. *See* Restatement (Third) of Law Governing Lawyers § 26 cmt. d, illus. 2 (2000) (explaining that a client will not liable when the client's lawyer negligently collides with a third party's automobile when arriving for a negotiating session with the third party on behalf of the client).

Finally, in *Devault*, the question before this Court was whether the appellant client should be penalized for its attorney's failure to comply with the district court's discovery orders. 107 Idaho at 2–3, 684 P.2d at 979–80. In that case, the district court dismissed Devault's action because his attorney failed to comply with several discovery orders. *Id.* at 2, 684 P.2d at 979. Devault appealed the dismissal, arguing that "any failure to comply with orders of the court was the fault of his attorney; thus, he should not be penalized by dismissal of his action." *Id*. In affirming the dismissal, we cited Idaho Rule of Civil Procedure 37(b), which allows a trial court to "dismiss the action or proceeding" if a party, or its agent, fails to obey an order to provide or permit discovery. *Id.* We also explained that Devault could not blame his attorney because "litigants freely choose their attorney and cannot avoid the consequences of the attorney's actions":

> In upholding the district court's dismissal of this action, we recognize that the result may well penalize Appellant more directly than his counsel. However, that is the consequence of the rule allowing dismissals. In recognizing the relative hardship upon Appellant as distinguished from counsel, it must be kept in mind that district courts cannot function efficiently unless they can effectively require compliance with reasonable rules. Absence of meaningful power to require that compliance would make for disorder and preclude effective judicial administration at the trial court level.

*Id.* at 2–3, 684 P.2d at 979–80 (quoting *Chism v. Nat'l Heritage Life Ins. Co.*, 637 F.2d 1328, 1332 (9th Cir. 1981)). Nevertheless, *Devault* does not support Primera Beef's position for two reasons: first, the issue of agency was not before this Court because the district court relied on a specific rule of procedure, *i.e.*, I.R.C.P. 37(b), to support its dismissal of the action; and second, we have held that there are times when a litigant can in fact avoid the consequences of their attorney's actions if the attorney was acting outside the scope of their authority, *see Cameron*

*Sales, Inc.*, 93 Idaho at 455–56, 369 P.2d at 291–92, which is the issue in this case. In sum, while it is true that an agent's misrepresentation, negligent action, or failure to comply may still be within the scope of the agent's authority, whether a principal is liable depends on the type of action and the circumstances surrounding the action.

Here, the parties do not dispute that implicit in Roark's express authority to represent Ward was the authority to communicate with the prosecuting attorney. That is, it was "necessary, usual, and proper" for Roark, a criminal defense attorney, to communicate with the prosecuting attorney regarding the criminal case. Yet our inquiry cannot end there. We need to go a step further and look to the specific communication in this case. That is, based on the facts and circumstances of this case, was it "necessary, usual, and proper" for Roark to violate the terms of the Settlement Agreement to get the pending criminal action dismissed? We hold that it was not.

As noted, Roark was Ward's attorney in the underlying civil lawsuit and even signed the Settlement Agreement as his attorney in what appears to be an approval of the form of the agreement. Thus, Roark knew that if Ward were to disclose the terms of the Settlement Agreement, he would be in breach of the agreement and potentially have to pay liquidated damages. Accordingly, Roark could not have reasonably believed that Ward's hiring of Roark to represent him in the criminal action, or his inquiry into whether a dismissal was possible, somehow encompassed permission to reveal the confidential terms of the Settlement Agreement. Roark had obvious and simple alternatives to inform the prosecuting attorney that a settlement had been reached without revealing the terms. For example, Roark could have informed the prosecutor that a confidential settlement had been reached, and then the prosecutor could have confirmed that with Primera Beef. Roark could have also filed the Settlement Agreement under seal, just as Primera Beef did in this action, and sought leave of the district court before disclosing its contents. Thus, even construing the facts most favorably to Primera Beef, we hold that the district court did not err in granting summary judgment in favor of Ward. There is no genuine dispute of material fact that Roark was not acting within the scope of his authority when he disclosed the confidential terms of the Settlement Agreement to the prosecuting attorney.

## C. Ward is entitled to attorney fees and costs on appeal.

Both parties request attorney fees and costs on appeal under Idaho Code section 12-120(3) and the terms of the Settlement Agreement. As for attorney fees, the parties concede that this case involves a commercial transaction under section 12-120(3). Additionally, the express

terms of the Settlement Agreement authorize an award of attorney fees. "Where a valid contract between the parties contains a provision for an award of attorney fees, the terms of the contract establish a right to attorney fees." *Lamprecht v. Jordan, LLC*, 139 Idaho 182, 187, 75 P.3d 743, 748 (2003). The Settlement Agreement contains the following provision regarding attorney fees:

> Should any action be brought to interpret or enforce any provision hereof, or for damages for breach hereof, the prevailing party shall be entitled to such reasonable attorney's fees and costs, as may be determined by any court of competent jurisdiction wherein such action is brought, including attorney's fees and costs on appeal.[4]

Thus, the terms of the Settlement Agreement establish a right to attorney fees as well. Accordingly, because Ward prevailed in this appeal, he is entitled to attorney fees under both section 12-120(3) and the terms of the Settlement Agreement.

As for costs, costs are awarded to the prevailing party as a matter of course under Idaho Code section 12-107 and Idaho Appellate Rule 40. *See Big Wood Ranch, LLC v. Water Users' Ass'n of Broadford Slough & Rockwell Bypass Lateral Ditches, Inc.*, 158 Idaho 225, 233, 345 P.3d 1015, 1023 (2015). Therefore, Ward is also entitled to costs on appeal.

## IV.    CONCLUSION

We affirm the district court's grant of summary judgment in favor of Ward. We award attorney fees and costs to Ward.


Chief Justice BURDICK, and Justices BRODY, and BEVAN **CONCUR.**


STEGNER, J., dissenting.

I respectfully dissent. While the majority correctly identifies the principles governing an agency relationship, I think it ignores special agency rules applicable to the attorney-client relationship. At the very least, the majority misapplies a key part of the test regarding implied authority. I believe a genuine issue of material fact remains to be resolved. As a result, I would reverse the district court's grant of summary judgment and remand.

I begin with the recognition that "[i]n general, there is a presumption that an attorney is authorized to act for his or her client in all matters involved in the action." 7A C.J.S. Attorney & Client § 313 (2019). "Ordinarily, the power of an attorney to act for his or her client in an action

---

[4] *See* fn. 1, herein. By arguing that the Settlement Agreement provides an alternate basis for awarding attorney fees, by necessity the Court must consider the language of that provision.

is to be considered sufficient until disproved, not void or insufficient until proved." *Id.* Given this presumption, it would be Ward's burden to prove that Roark did not have the requisite authority to disclose Ward's settlement agreement with Primera. In my view, Ward has not met his burden to overcome this "rebuttable presumption."

Even without the application of this presumption, I believe a genuine issue of material fact remains to be resolved by a jury. "Express authority refers to that authority which the principal has explicitly granted the agent to act in the principal's name. Implied authority refers to that authority which is necessary, usual, and proper to accomplish or perform the express authority delegated to the agent by the principal." *Am. W. Enters., Inc. v. CNH, LLC*, 155 Idaho 746, 753, 316 P.3d 662, 669 (2013) (quoting *Bailey v. Ness*, 109 Idaho 495, 497–98, 708 P.2d 900, 902–03 (1985)). We have "viewed the question of whether an agency relationship exists as a question of fact for the jury to determine." *Forbush v. Sagecrest Multi Family Prop. Owners' Ass'n, Inc.*, 162 Idaho 317, 330, 396 P.3d 1199, 1212 (2017) (citation omitted).

The scope of *implied authority* depends on a correct identification of the *express authority* delegated to the agent by the principal. The majority does not question the trial court's apparent conclusion that the scope of Roark's express authority was limited to defending Ward in the criminal action. Ward's affidavit states that he "inquired with [Roark] whether it would be possible to also have the criminal matter dismissed." There are at least two reasonable interpretations of Ward's instruction: Ward could be telling Roark to *find out* if the criminal matter could be dismissed, or Ward could be instructing Roark to *do what he could to get* the criminal matter dismissed. The former is an academic exercise. Why would a defendant want his lawyer to merely *find out* if the case could be resolved? The latter goes to the heart of a lawyer's representation of his client. The instruction seems to be: Do what you can to get this charge against me dismissed. From my perspective, the latter alternative is much more plausible. These facts, when drawn in favor of Primera Beef as they must be as the nonmoving party, reveal that there is a genuine issue of material fact as to Roark's authority. It is clear there was express authority given to Roark, but what is unclear and remains to be resolved is Roark's implied authority. Coupling this logical inference with the presumption Roark was "authorized to act for his client in all matters involved in the action" leads me to conclude a jury should resolve this factual dispute. *See* 7A C.J.S. Attorney & Client § 313.

14

The lack of definition of the scope of the *express* authority necessarily leaves undefined the scope of Roark's *implied* authority. While there is apparently no dispute that Ward did not *expressly* tell Roark to disclose the terms of the confidential Settlement Agreement, this does not end the inquiry. What is "necessary, usual, and proper to accomplish or perform the express authority" depends on the object of the express authority. *Am. W. Enters., Inc.*, 155 Idaho at 753, 316 P.3d at 669. Ordinarily, it would be "necessary, usual, and proper" for an attorney representing a client in a criminal matter to disclose a settlement agreement from the related civil matter between the purported victim (Primera Beef) and the defendant (Ward). If Roark was authorized to do what he could to get Ward's criminal matter dismissed—which is a reasonable inference—rather than to simply inquire about the possibility of its dismissal, a jury could easily conclude it was "necessary, usual, and proper" for Roark to disclose to the prosecutor Ward's civil settlement with Primera.

Further, I am not persuaded by the majority's treatment of Roark's disclosure of key terms in the Settlement Agreement as a "surrender or giving up [of a] substantial right of" his client, Ward. *See Cameron Sales, Inc. v. Klemish*, 93 Idaho 451, 455, 463 P.2d 287, 291 (1970) (quotation omitted). Exposing a client to liability for breach of contract is not the same as binding a client to a final compromise and settlement of a claim. Consequently, I think *Cameron Sales* is distinguishable from these facts.

I agree with the majority that Roark could and should have taken a variety of alternate steps to have the contents of the Settlement Agreement disclosed in Ward's criminal proceedings. However, this is recognized with the benefit of hindsight. At this stage in this case, I think there is a genuine issue of material fact about the scope of Roark's *implied* authority. The fact that Roark's conduct potentially exposed Ward to liability for breach of contract does not automatically take that conduct out of the scope of his implied authority. This is true, especially given the rebuttable presumption that exists. I think a genuine issue of material fact remains to be decided by a jury, and Primera Beef is entitled to have this factual question answered. For the foregoing reasons, I respectfully dissent.