# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 40016

JAMES W. CLARK, )
                           )
    Claimant-Appellant, )          Boise, June 2013 Term
                           )
v. )          2013 Opinion No. 86
                           )
CRY BABY FOODS, LLC, Employer, )        Filed: August 14, 2013
                           )
    Defendant, )          Stephen Kenyon, Clerk
                           )
and )
                           )
IDAHO STATE INSURANCE FUND, Surety, )
                           )
    Defendant-Respondent. )

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Industrial Commission is <u>affirmed</u>.

James W. Clark, Vancouver, Washington, pro se appellant.

Anderson Julian & Hull, Boise, for respondent. Alan K. Hull and Rachael O'Bar argued.

_____

PER CURIAM.

This appeal arises from a worker's compensation claim stemming from an accident at an onion processing plant on April 17, 2008. James Clark was injured when his right forearm was caught in a roller machine which resulted in significant soft-tissue damage. The Industrial Commission determined that Clark had suffered a compensable injury and that he was entitled to medical treatment through the date of his hearing and temporary disability benefits from the date of injury until he reached medical stability on April 17, 2009. The Commission also found that Clark had a permanent partial impairment (PPI) of 10% of the whole person and a permanent partial disability rated at 25% of the whole person. Clark appeals, arguing that the Commission committed error by relying on fraudulent evidence. We affirm.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 17, 2008, James W. Clark had been employed by Cry Baby Foods, LLC, for six days. He worked near a roller machine that stripped onions coming from delivery trucks of leaves, dirt, and outer layers. It was Clark's job to clear clogs from this machine with a stick. Clark's glove caught in the machine, and his hand and arm were trapped between two rollers. Clark was stuck in the machine for around ten minutes before it could be shut off, and it took another ten to fifteen minutes before he could be extricated.

Clark was evaluated by paramedics and transported by Life Flight to St. Alphonsus in Boise. Although repeated x-rays showed no signs of fracture, there was significant soft-tissue damage to Clark's right forearm. Clark was evaluated by Dr. Gross, an orthopedic surgeon, in the emergency room. At that time, Clark's chief complaints were pain and swelling. He was discharged with a prescription for pain medication and an antibiotic and was told to return the next day for a follow-up appointment. At the follow-up appointment, Clark complained that he could not move his thumb, but he had feeling in all of his fingers. The next week, Clark returned for another follow-up with Dr. Gross. He reported that he kept reliving the accident, and he had returned to work so that he could "confront the machine." He complained that he was having difficulty sleeping, and Dr. Gross noted that "[h]e sounds like he is having some PTSD [post-traumatic stress disorder] symptoms." Dr. Gross prescribed some medication to help with sleep and recommended he start physical therapy in Ontario.

Clark began physical therapy on April 22, 2008, and over the course of fifteen visits in April and May reported mild improvement. At another follow-up appointment on May 2, Dr. Gross noted that Clark's arm was healing well and that he would not recommend any surgeries. He referred him to a psychiatrist to address Clark's evident post-traumatic stress issues. A few days later, Clark returned to Dr. Gross desiring a referral for housekeeping and cooking services. The physician's assistant evaluating him declined, noting that "he can perform all of his activities of daily living and thus does not need a housekeeper." On May 29, Dr. Gross signed a work release indicating that Clark was capable of returning to work on a modified or light-duty basis. That form was backdated to May 9, 2008. Clark returned to work on June 5. His employer stated that he worked for a few hours and then left, claiming he had a doctor's appointment. Clark never returned to work.

2

Following the referral from Dr. Gross, Clark sought treatment from Lifeways Mental Health Services for psychiatric evaluation and treatment. He was diagnosed with PTSD and expressed frustration at "having to arrange all the medical stuff" that he needed in order to heal. This topic, as well as the related litigation, became a source of a great deal of anxiety for Clark. On multiple occasions during his treatment at Lifeways, Clark expressed anxiety about his worker's compensation claim and related issues. During his treatment with Lifeways, he was referred to Dr. Heriza for a psychological evaluation. Dr. Heriza noted his concern about Clark's history of substance abuse as it related to his prescribed narcotic pain medication. Dr. Heriza considered other possible factors contributing to Clark's mental health condition, including PTSD resulting from the industrial accident, substance-induced mood disorder, seizures or epilepsy, and Cluster B personality disorder.

At a follow-up appointment with Dr. Heriza, Clark indicated that he was taking hydrocodone "less for pain and just to help his mood." Dr. Heriza expressed concern over "significant issues with habituation and addiction." Dr. Heriza ruled out seizures or epilepsy as a contributing factor in Clark's mental state, and attributed his mental health issues to "significant substance related issues" as well as "some mild anxiety/posttraumatic symptoms and prominent cluster B features."

As a result of Clark's ongoing complaints of pain, surgery was performed on his arm on February 19, 2009. This surgery removed scar tissue around Clark's radial nerve, and the nerve was resected in an attempt to relieve the pain he was feeling. By April 17, 2009, his doctor indicated that Clark had reached the point of maximum medical improvement (MMI) and was ready to be evaluated regarding a partial permanent impairment rating (PPI). Clark continued to complain of pain and reduced strength in the hand and arm, but his doctor did not believe this would improve appreciably. His doctor initially assessed a 16% whole person PPI, but upon reassessment, changed that figure to 18%.

Clark was also evaluated by a neuropsychologist at the request of the surety. Dr. Beaver, the neuropsychologist, stated that the "accident was the predominate cause above all other causes of his posttraumatic stress disorder. Unfortunately, his multiple pre-existing psychiatric issues, including recurrent major depression, polysubstance dependency, somatization, and borderline personality disorder also act to exacerbate his psychological difficulties." Dr. Beaver assessed Clark's PPI as "a 10% impairment of the whole person for mental and behavioral impairments.

3

However, only 5% (one half) of this rating is directly attributable to the work injury of 4/17/08." Dr. Beaver attributed the other half of the rating to Clark's preexisting psychological conditions.

A separate psychological exam was performed by Dr. Eric Holt. Dr. Holt indicated that he believed Clark sustained a 5% whole person PPI resulting from PTSD associated with his April 17, 2008, accident. Dr. Holt noted that Clark demonstrated "symptom magnification and exaggeration." Dr. Holt also stated that "Mr. Clark has had chronic problems with narcissistic, addictive, and acting-out behavior with manipulative maneuvers, emotionalism and portraying himself as in the role of being a victim." Dr. Holt recommended that Clark be tapered off narcotic medication and opined that "he does not require mood stabilizing or antipsychotic medication as a result of the April 17, 2008, injury."

Clark complained of pain and reduced strength in his right arm prior to the April 17, 2008, injury. He attributed this to a work injury that occurred while employed at a recycling plant in June 2005. He also filed a worker's compensation claim for that injury. However, the record does not show a PPI attributable to this preexisting injury.

Clark had significant psychological issues prior to his accident on April 17, 2008. In 1989 he attempted to commit suicide by overdosing on prescription medication. Medical records indicate that this attempt was precipitated by a separation from his wife as well as "frustration over dealing with the Industrial Accident Commission regarding compensation following an injury at work." Apparently his back was injured when he attempted to thwart a convenience store robbery while employed as a clerk. He expressed "years of frustration and bitterness over the handling of the case." He again attempted suicide in 1996 by overdosing on a different prescription medication.

The Commission found that Clark's PPI related to the April 17, 2008, accident was 10% of the whole person. The Commission found that Clark was entitled to temporary disability benefits from the date of the accident until he was cleared for light-duty work on June 5, 2008. It also found that he was entitled to temporary disability benefits for his surgical recovery period, from February 9, 2009, through the date of medical stability on April 17, 2009. The Commission found that Clark was entitled to permanent partial disability of 25% of the whole person and that he failed to show that he was totally disabled or that he qualified as an odd-lot worker. Further, the Commission found that Clark was entitled to benefits for medical care to the date of hearing but not in the future. Finally, the Commission found that Clark was not entitled to attorney fees.

4

Clark appeals *pro se*, arguing that his medical records were fraudulently obtained. He also argues that the Commission relied on "altered documents" and irrelevant evidence in reaching its conclusion.[1] We affirm.

## II. ISSUE ON APPEAL

1. Has Clark demonstrated error in the proceedings before the Industrial Commission?

## III. STANDARD OF REVIEW

The Industrial Commission's legal conclusions are freely reviewable by this Court. *Stoddard v. Hagadone Corp.*, 147 Idaho 186, 190, 207 P.3d 162, 166 (2009).

## IV. ANALYSIS

Clark's briefing has presented unique difficulties for the Court. He has used an unconventional writing style, liberally employing capitalization, bold font, and underlining, sometimes deploying all three forms of emphasis at once. Of greater significance, Clark's arguments are wholly unsupported by legal authority or citations to the record.

This Court has repeatedly held that pro se litigants are held to the same standards and rules as those litigants represented by an attorney. *See, e.g. Rizzo v. State Farm Ins. Co.*, No. 39611, 2013 WL 2232287 at *10 (May 22, 2013). Thus, this Court has refused to consider an appellant's claims "because he has failed to support them with either relevant argument and authority or coherent thought." *Liponis v. Bach*, 149 Idaho 372, 374, 234 P.3d 696, 698 (2010).

> Where an appellant fails to assert his assignments of error with particularity and to support his position with sufficient authority, those assignments of error are too indefinite to be heard by the Court. *Randall v. Ganz*, 96 Idaho 785, 788, 537 P.2d 65, 68 (1975). A general attack on the findings and conclusions of the district court, without specific reference to evidentiary or legal errors, is insufficient to preserve an issue. *Michael v. Zehm*, 74 Idaho 442, 445, 263 P.2d 990, 993 (1953). This Court will not search the record on appeal for error. *Suits v. Idaho Bd. of Prof'l Discipline*, 138 Idaho 397, 400, 64 P.3d 323, 326 (2003). Consequently, to the extent that an assignment of error is not argued and supported in compliance with the I.A.R., it is deemed to be waived. *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005).

*Bach v. Bagley*, 148 Idaho 784, 790–91, 229 P.3d 1146, 1152–53 (2010).

---

[1] Clark also vociferously complains about the performance of his former attorney before the Commission. Those complaints must be addressed in separate proceedings. *Morris v. Hap Taylor & Sons, Inc.*, No. 39747, 2013 WL 2249325, at *5 (May 23, 2013). It is for that reason that this Court denied Clark's request that his former attorney appear at oral argument to respond to Clark's claims of "ineffective assistance of counsel.'"

Clark references several findings and statements made by the Commission but fails to explain how they are deficient. He claims there are multiple "forged" or "altered" documents and instances of fraud, but does not cite the record or indicate how documents were changed or how they are fraudulent.

Although Clark's failures in briefing warrant summary affirmance of the Commission's decision, we will address two issues that appear to have particularly upset Clark. First, he claims his medical records were improperly obtained. Second, he claims that the medical records obtained were not relevant to his April 17, 2008, injury.

Clark's Amended Complaint was accompanied by multiple medical releases. There is no indication that these releases are deficient in any way. Furthermore, although Clark refers to altered and forged documents, he does not specifically reference these medical releases. In fact, he fails to mention these medical releases at all. Thus, we conclude that Clark assented to the release of his medical information.

Clark's medical history was relevant to the proceedings before the Commission. "All medical information relevant to or bearing upon a particular injury or occupational disease shall be provided to the employer, surety, manager of the industrial special indemnity fund, or their attorneys or authorized representatives." I.C. § 72-432(11). It is necessary to determine the extent the current injury is responsible for an employee's disability. Although Clark objects to the Commission's consideration of his prior drug use, psychiatric history and prior injuries, he was seeking disability benefits based on physical and psychological impairments. Thus, it was necessary to determine if, and to what extent, he was previously disabled. Multiple health professionals believed a good portion of Clark's psychological impairment, including his PTSD symptoms, were attributable to an underlying personality disorder and a history of substance abuse. Further, Clark had previously filed a worker's compensation claim relating to an injury to the same arm that was injured on April 17. For these reasons, his medical history relating to prior drug use, mental health, and physical injuries was relevant to the determination of the extent his April 17 injury contributed to his overall disability.

## V. CONCLUSION

This Court affirms the decision of the Industrial Commission. Costs to Respondents.