# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50279-2022

| | | |
|---|---|---|
| JOHN GOMEZ, an individual, | ) | |
| | ) | |
|   Plaintiff-Counterdefendant-<br>  Appellant, | ) | Boise, May 2024 Term |
| | ) | |
| | ) | Opinion filed: August 6, 2024 |
| v. | ) | |
| | ) | Melanie Gagnepain, Clerk |
| GILBERT HURTADO, an individual; and<br>JESUS HURTADO, an individual, | ) | |
| | ) | |
|   Defendants-Counterclaimants-<br>  Respondents, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| G & H DAIRY, LLC, an Idaho limited liability<br>company, | ) | |
| | ) | |
|   Defendant-Counterclaimant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Jerome County. Ned C. Williamson, District Judge.

The decision of the district court is affirmed.

Robinson & Cotten, Rupert, for Appellant. Brent T. Robinson argued.

Sawtooth Law Offices, PLLC, Boise, for Respondents Gilbert Hurtado and Jesus Hurtado. Brian A. Faria argued.

_____

ZAHN, Justice.

This case concerns a dispute between the three members of a limited liability company. John Gomez, Gilbert Hurtado, and Jesus Hurtado were the members of G & H Dairy, LLC ("G&H"). In 2013, G&H defaulted on its Wells Fargo Bank loans and the members of G&H engaged in a series of negotiations with Wells Fargo to avoid bankruptcy. During these negotiations, the members signed a "letter of intent" ("LOI") that indicated G&H would distribute

the real and personal property of G&H to Gomez and Jesus Hurtado and requested that Wells Fargo agree to certain terms. G&H successfully restructured its debt with Wells Fargo, which involved Gomez and Jesus Hurtado separately purchasing the personal property business assets of the dairies and assuming portions of G&H's debt. However, Gomez and the Hurtado brothers could not agree on a sales price for the real property associated with the dairies.

Gomez commenced this lawsuit against the Hurtado brothers and G&H (collectively "the Hurtados") asserting claims for breach of contract, estoppel, unjust enrichment, and breach of fiduciary duty related to the failure to convey the real property to Gomez. Gomez also sought judicial dissolution and winding up of G&H. The Hurtados filed counterclaims against Gomez seeking damages under several equitable theories and also seeking dissolution and winding up of G&H. The district court granted summary judgment in favor of the Hurtados on Gomez's breach of contract claim after concluding that the LOI was unenforceable but denied summary judgment on the remaining claims. Following a bench trial, the district court ordered the dissolution and winding up of G&H and dismissed the parties' remaining claims. Gomez appeals.

We affirm because the LOI is unenforceable, and the district court did not err in dismissing Gomez's remaining claims or in its winding up and accounting of G&H.

## I. FACTUAL AND PROCEDURAL BACKGROUND

G&H is a three-member limited liability company, organized in 2004 for the purpose of engaging in the dairy business. G&H's members were John Gomez, and brothers Gilbert Hurtado, and Jesus Hurtado. Each owned a one-third interest in G&H. Gomez was responsible for the financial affairs of G&H and Gilbert managed the dairy operations. G&H owned three dairies: the Wendell Dairy, the Buhl Dairy, and the Preston Dairy. The members of G&H partnered with others, who are not parties to this case, to create an entity separate from G&H to purchase a fourth dairy, Legacy Dairy. That entity is not a party to this appeal. G&H financed the purchase of its three dairies by taking out loans from third-party lenders, including Wells Fargo Bank. G&H also obtained an operating line of credit from Wells Fargo.

As a result of the financial downturn in the late 2000s, G&H experienced financial difficulties. In 2009, milk prices dropped, feed costs increased, and the loan-to-value ratio on G&H's loans began to deteriorate. In response to the deteriorating loan-to-value ratio, Wells Fargo internally designated G&H's loans as one of its "special assets," which resulted in greater scrutiny of the loans by Wells Fargo and a reduction in the length of the loans. In 2011, there were disputes

2

between the members of G&H relating to Gomez's management of the financial affairs of G&H. As a result, the Hurtado brothers took possession of the financial records of G&H. By 2012, G&H was aware that its financial situation with Wells Fargo was deteriorating because it was borrowing more than the collateral securing the loans could support.

The members of G&H began negotiating with Wells Fargo to restructure G&H's loans. The members of G&H first proposed that Jesus and Gomez would purchase the dairy properties themselves. Wells Fargo did not agree to the proposal. Instead, on April 29, 2013, G&H received a Notice of Default from Wells Fargo, which declared G&H in default on almost $24 million in loans. The members of G&H began a new series of negotiations with Wells Fargo to avoid having G&H file for bankruptcy.

On May 6, 2013, the Hurtado brothers and Gomez sent a letter to Wells Fargo proposing that Gomez and Jesus buy the personal property assets of the three dairies but lease the real property from G&H. It is unclear whether Wells Fargo ever responded to the letter. On May 15, 2013, Gomez and the Hurtado brothers sent Wells Fargo a new document proposing different terms entitled, "Outline of Proposed Transactions," which provided that Gomez would "acquire" the dairy facilities, herd, feed, and equipment of two dairies, while Jesus would "acquire" the dairy facilities, herd, feed, and equipment of the remaining dairy. On May 16, Wells Fargo sent a response letter rejecting the May 15 proposal.

On May 21, 2013, the Hurtado brothers and Gomez signed a "Letter of Intent" ("LOI") that contained a new, third set of terms that differed from those in the May 6 and the May 15 letters. The LOI "distributed" the Wendell Dairy and its assets to Jesus, and "distributed" the Buhl Dairy and Preston Dairy and their assets to Gomez. The LOI provided that Gomez and Jesus would assume the debts of G&H. Under the LOI, Gilbert neither received any assets of G&H nor took on any of its debt.

Wells Fargo did not formally respond to the LOI, but instead sent term sheets for the restructuring of G&H's debt that distributed the debt between Jesus and Gomez and provided for new operating loans that would allow them to operate the respective dairies. Between May 21, 2013, and September 2013, negotiations continued and revised term sheets were exchanged.

On June 11, 2013, G&H sold the personal property assets of the Wendell Dairy to an unrelated third party, Harry's Dairy, and used the sale proceeds to pay down G&H's operating debt. Harry's Dairy leased the Wendell Dairy real property from G&H.

During this time, Gomez formed two new LLCs: Melon Valley, LLC and Daytona, LLC. Gomez was the sole member of each LLC. In September 2013, term sheets with Wells Fargo were finalized with, and executed by, Melon Valley and Daytona. The term sheets identified that Melon Valley and Daytona would lease the real property of the Buhl and Preston dairies and receive new lines of credit to purchase the personal property assets of the Buhl and Preston dairies. The proceeds from these asset sales would be used to pay down the operating debt that G&H owed to Wells Fargo.

Jesus also owned two LLCs: Jesus Hurtado Dairy LLC ("JHD") and Triple H Dairy LLC ("Triple H"). In September 2013, term sheets with Wells Fargo were finalized with, and executed by, JHD and Triple H. The term sheets identified that Triple H would receive a new line of credit to purchase the personal property assets of Legacy Dairy.

On December 18, 2013, the respective LLCs closed on the loan transactions with Wells Fargo as contemplated by the term sheets. As part of the transactions, Melon Valley and Daytona entered into purchase and sale agreements with G&H for the personal property assets of the Buhl and Preston dairies and entered into lease agreements for the real property associated with both dairies. Triple H entered into a purchase and sale agreement for the personal property assets of Legacy Dairy and a lease agreement for the real property. The effect of the agreements was to restructure G&H's operating debt.

Following the sale of all of its personal property assets, G&H became a landholding and real property leasing entity. Melon Valley operated the Buhl Dairy until 2015, at which time it ceased operations and subleased the Buhl Dairy real property to several unrelated third parties through 2021. Daytona operated the Preston Dairy until 2017, when Daytona lost its milk contract, ceased all operations at the Preston Dairy, and stopped paying rent to G&H. In 2016, JHD took possession of the Wendell Dairy real property and began making lease payments to G&H. Between 2013 and 2021, JHD had access to 330 acres of the Wendell Dairy for which it did not pay rent.

Following the restructuring of G&H's debt with Wells Fargo, the members of G&H agreed that the real property associated with the three dairies needed to be sold, but the members could not agree on the material terms for the sales. On October 26, 2016, Gomez filed a complaint against the Hurtados for: (1) judicial dissolution of G&H; (2) breach of contract; (3) estoppel; (4) unjust enrichment; and (5) breach of fiduciary duty. Gomez alleged that the LOI was an

4

enforceable contract and that the Hurtados breached the contract when they refused to convey the real property to him, as contemplated by the terms of the LOI. The Hurtados filed a counterclaim against Gomez for judicial dissolution and various other claims. The case languished in court for several years.

On April 16, 2019, the parties stipulated that the real property associated with the three dairies would be appraised, the parties could exercise options to purchase the properties, and if the options were not exercised, the properties could be sold to a third party. The stipulation required any net proceeds from the sale to go into a joint bank account controlled by all three members of G&H. On March 4, 2021, Hurtado Farms, LLC, an entity created by Jesus, purchased the real property associated with the Wendell and Buhl dairies. The net proceeds of the sales were placed in a joint escrow account.

On or before 2020, the Preston Dairy suffered approximately $600,000 in vandalism and theft and the parties agreed the repairs should be completed before the property was sold. The parties stipulated to the sale of the Preston Dairy real property but have not marketed the property because the repairs have not yet been completed.

On May 10, 2021, the Hurtados moved for summary judgment on Gomez's breach of contract claim, arguing that the LOI was an unenforceable agreement to agree and lacked sufficient property descriptions to transfer the real property associated with the Buhl and Preston dairies. The district court agreed and granted summary judgment in favor of the Hurtados.

The Hurtados then filed a second motion for partial summary judgment on Gomez's claims of quasi-estoppel, unjust enrichment, and breach of fiduciary duty. The Hurtados argued that Gomez's quasi-estoppel claim should be dismissed because the LOI was not an enforceable agreement; the unjust enrichment claim should be dismissed because Gomez agreed to the restructuring and therefore the Hurtados were not unjustly enriched; and the breach of fiduciary duty claim should be dismissed because Gomez agreed to restructure the debt and enter into the new loans with Wells Fargo. The district court denied the motion after determining that there were genuine issues of material fact concerning whether the Hurtados changed their position on transferring the real properties to Gomez and the distribution of G&H's assets and liabilities, and whether the Hurtados breached a fiduciary duty when they refused to transfer the real properties to Gomez.

The parties stipulated to the appointment of a Special Master, Certified Public Accountant Dennis Reinstein, to provide the district court with an accounting of the financial records of G&H as it related to disputed factual issues. The parties then identified twelve disputed factual issues for Reinstein to resolve. The issues generally related to accounting transactions of the members of G&H during its business operations and the restructuring of G&H's loans with Wells Fargo.

Reinstein examined business documents and interviewed the parties and professionals who had provided accounting and legal services to G&H. Reinstein prepared a draft report, which he provided to the parties and their counsel. They reviewed the draft and provided their written comments to Reinstein. Reinstein provided written responses to the parties' comments and finalized his report.

Reinstein submitted an 81-page accounting analysis to the district court with over 750 pages of financial documents supporting his conclusions. Reinstein's report arrived at a final accounting allocation between the parties. The parties filed written objections with the district court concerning the Special Master Report. The district court held a hearing on the objections and issued both an oral ruling and a written decision overruling some of the parties' objections and allowing other objections to be further argued at the forthcoming court trial.

The district court subsequently held a seven-day court trial on the remaining claims, after which the parties submitted proposed findings of fact and conclusions of law. The district court issued its written seventy-nine-page findings of fact and conclusions of law that dismissed all claims except for the request for judicial dissolution. The district court ordered the dissolution and addressed the winding up and accounting of G&H and the sale of the real property associated with the Preston Dairy. In winding up G&H, the district court largely adopted the accounting of the Special Master with some adjustments. Gomez filed post-trial motions challenging the district court's decision, which the district court rejected. Gomez timely appealed.

## II.   ISSUES ON APPEAL

1. Whether the district court erred in dismissing Gomez's breach of contract claim because the LOI was unenforceable.
2. Whether the district court erred in dismissing Gomez's breach of fiduciary duty claim.
3. Whether the district court erred in dismissing Gomez's quasi-estoppel claim.
4. Whether the district court erred in dismissing Gomez's unjust enrichment claim.
5. Whether the district court erred in its accounting and winding up of G&H.
6. Whether any party is entitled to attorney fees on appeal.

6

## III. ANALYSIS

**A. The district court did not err in granting summary judgment on Gomez's breach of contract claim because the LOI is unenforceable.**

The district court dismissed Gomez's breach of contract claim on summary judgment after concluding that the LOI was an unenforceable agreement to agree. The district court held that the LOI contemplated further definitive actions by the parties or others and that many of the material terms of the LOI were uncertain. The district court also concluded that the LOI was unenforceable because it lacked adequate real property descriptions for the dairies.

Gomez then filed a motion for reconsideration, arguing that the LOI was both an enforceable contract to transfer the real property associated with the Buhl and Preston dairies and an enforceable dissolution agreement. Gomez argued that the district court should look to parol evidence to provide the missing property descriptions, and that the part performance exception to the statute of frauds applied, even though the district court did not cite the statute of frauds as a basis for its decision granting summary judgment. The district court denied the motion for reconsideration after concluding that parol evidence cannot supply the necessary terms for a contract, the part performance exception to the statute of frauds was not available in this instance, and the LOI was unenforceable because it contemplated more formal future agreements.

Gomez contends that the district court erred when it concluded that the LOI was an unenforceable agreement to agree because it failed to consider the entire LOI when determining the intent of the parties. Gomez argues that the LOI is not ambiguous, contains all the material terms to dissolve G&H, and that it was to be expected that there would be additional documents to dissolve G&H. The Hurtados respond that the LOI was not a binding contract or dissolution agreement, but an agreement to agree entered during a period of frantic negotiation to avoid bankruptcy. The Hurtados argue that the LOI is missing critical components of a dissolution agreement and fails to satisfy any of the criteria under Idaho Code section 30-25-701(a), which identifies the circumstances under which an LLC can be dissolved.

"When reviewing a summary judgment ruling or a ruling on a motion to reconsider a summary judgment order, this Court applies the same standard utilized by the district court in deciding the motion." *Christiansen v. Potlatch #1 Fin. Credit Union*, 169 Idaho 533, 540, 498 P.3d 713, 720 (2021). "With respect to that standard, this Court exercises free review to determine if summary judgment is proper." *Id*. "Summary judgment is appropriate if 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no

7

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id*. (quoting *Gagnon v. W. Bldg. Maint., Inc.*, 155 Idaho 112, 114, 306 P.3d 197, 199 (2013)). "When considering a motion for summary judgment, this Court construes disputed facts in favor of the nonmoving party and draws all reasonable inferences in the nonmoving party's favor." *Id*. "If the evidence reveals no disputed issues of material fact, what remains is a question of law, over which this Court exercises free review." *Krinitt v. Idaho Dep't of Fish & Game*, 162 Idaho 425, 428, 398 P.3d 158, 161 (2017) (citation omitted).

"An enforceable contract 'must be complete, definite and certain in all of its material terms, or contain provisions which are capable in themselves of being reduced to certainty.'" *Geringer Cap. v. Taunton Props., LLC*, 172 Idaho 95, 529 P.3d 760, 766 (2023) (quoting *P.O. Ventures, Inc. v. Loucks Fam. Irrevocable Tr.*, 144 Idaho 233, 238, 159 P.3d 870, 875 (2007)). "If terms necessary to a contract are left for future negotiation, the contract cannot be enforced." *Hawes v. W. Pac. Timber, LLC*, 167 Idaho 896, 908, 477 P.3d 950, 962 (2020) (quoting *Dursteler v. Dursteler*, 108 Idaho 230, 234, 697 P.2d 1244, 1248 (Ct. App. 1985)). "We have long held that a document 'must speak for itself, and, if it is sufficiently definite in its terms to enlighten the court of the intent of the parties, it will be enforced.'" *Frizzell v. DeYoung*, 167 Idaho 801, 808, 477 P.3d 236, 243 (2020) (quoting *Allen v. Kitchen*, 16 Idaho 133, 142–43, 100 P. 1052, 1055 (1909)). "No enforceable contract comes into being when parties leave a material term for future negotiations, creating a mere agreement to agree." *Treasure Valley Home Sols., LLC v. Chason*, 171 Idaho 655, 659, 524 P.3d 1272, 1276 (2023) (quoting *BrunoBuilt, Inc. v. Strata, Inc.*, 166 Idaho 208, 217, 457 P.3d 860, 869 (2020)).

Gomez argues that the following language in the LOI renders it an enforceable contract to transfer the real property and business assets of the Buhl and Preston dairies to him:

> Effective July 1, 2013, John Gomez, through an existing or a newly formed entity, (Gomez) will be distributed the real property, CAFO Permit, irrigation equipment, water rights, dairy facilities, herd, feed, equipment and other assets located at the Buhl Dairy (G&H #2) and the Preston Dairy (G&H #3) subject to the following indebtedness . . . .

After reviewing the entirety of the LOI, we agree with the district court that the LOI was unenforceable because it contemplated further actions by the parties and Wells Fargo. The LOI was an offer sent *to Wells Fargo* in an effort to restructure G&H's debt, and there is no evidence in the record that Wells Fargo accepted this offer. The plain language of the LOI illustrates that its terms were conditioned on future events that had not yet occurred:

- The title of the document is "Letter of Intent" instead of contract or dissolution agreement.

- The opening paragraph of the LOI stated:

  > [The parties] have agreed to the preparation and execution of definitive transaction documents . . . . The ultimate goal will be to pay the entire indebtedness now owed . . . to Wells Fargo Bank (WFB). This letter of intent has been prepared in response to the letter of WFB, dated May 16, 2013 . . . ."

- Paragraph A indicated that G&H would "distribute[]" the Buhl and Preston dairies to Gomez "through an existing or newly formed entity" after the existing mortgages of the dairies were separated following discussions with two different lenders to take place at a later date.

- Paragraph B stated that Jesus would sell the assets and lease the real property of the Wendell Dairy to an unknown "third party" and that "[t]he sale and distribution of proceeds [from selling the assets] will also take place [a month and a half later]."

- Paragraph C included language that Jesus would amend, at some unspecified point in the future, a lease with third-party business partners and that approval by a third-party lender was needed before certain transactions could take place.

- Paragraph E provided that the release of Gilbert from all liability to Wells Fargo "is a condition to the transactions set forth herein."

- Paragraph F contains a request by Gomez and Jesus for specific terms of new credit agreements from Wells Fargo.

- Paragraph G provides that, after a new credit agreement is entered into between Gomez and Wells Fargo, Gomez will pay $1.5 million and pledge $540,000 in collateral to Wells Fargo.

- Paragraph H requests that Wells Fargo "forbear from taking any additional payments from any of the dairies between now and July 1, 2013 . . . ."

The plain language of the LOI unambiguously conditions the transfer of the real and personal property associated with the Buhl and Preston dairies on Wells Fargo's acceptance of, or agreement to, other terms contained in the document. For example, the Hurtado brothers and Gomez conditioned their offer on Wells Fargo's agreement to release Gilbert from future liability. They requested that Wells Fargo grant them certain credit terms and forbear from taking additional payments. They also conditioned their offer on the negotiation of deals with third parties who had

not signed the LOI. And the LOI expressly contemplated the future preparation and execution of definitive transaction documents. Read in its entirety, the LOI was an offer to Wells Fargo in connection with the ongoing negotiations that sought to keep G&H out of bankruptcy. Wells Fargo never accepted the offer.

There is no indication in the LOI that the Hurtado brothers and Gomez agreed to transfer the properties regardless of these conditions. The evidence indicated that the purpose of the negotiations was to convince Wells Fargo to restructure G&H's debt to avoid bankruptcy. In the absence of this agreement, the parties would have no reason to transfer the properties. This purpose is evident from the statement in the opening paragraph of the LOI, which states that it responds to Wells Fargo's May 16, 2013, letter. That letter rejected a prior offer by the Hurtado brothers and Gomez, which proposed a different distribution of property.

We are similarly unpersuaded by Gomez's argument that the LOI is an enforceable dissolution agreement. First and foremost, for the reasons previously discussed, the agreement lacks material terms and is an unaccepted offer. Further, while the LOI discusses transfers of the assets of G&H, it does not expressly discuss the dissolution of G&H. Idaho Code section 30-25-701(a), as pertinent here, allows for the dissolution of an LLC (1) under an event or circumstance that the operating agreement states causes dissolution, or (2) after the affirmative vote or consent of all the members to dissolve the LLC. I.C. § 30-25-701(a)(1), (2). G&H's operating agreement is silent as to dissolution, other than stating that the LLC is to be dissolved by the year 2044. Gomez contends that the signatures of the Hurtado brothers and Gomez on the LOI constitute consent to dissolve G&H because the LOI allegedly disposes of all of G&H's assets. However, the LOI makes no reference to dissolution and therefore the signatures cannot evidence consent to a term not set forth in the document. Accordingly, we reject Gomez's argument that the LOI is an enforceable dissolution agreement.

For these reasons, we conclude that the district court correctly determined that the LOI is unenforceable because it is conditioned on agreements and acceptances that had not yet occurred and because it contemplated the preparation and execution of future transactional documents. The district court properly granted summary judgment on Gomez's breach of contract claim. Because we hold that the LOI is unenforceable, we do not address the district court's alternative basis for summary judgment concerning the adequacy of the legal descriptions for the real property.

**B. The district court did not err in dismissing Gomez's breach of fiduciary duty claim.**

Gomez raised a breach of fiduciary duty claim that evolved throughout the litigation. Gomez first raised this claim in his third amended complaint, but he did not specify how the Hurtado brothers breached their fiduciary duties. Later, in opposition to the Hurtados' second motion for summary judgment, and then again in his proposed findings of fact and conclusions of law after trial, Gomez argued that the Hurtados breached their fiduciary duties when they failed to transfer the real property associated with the Buhl and Preston dairies to Gomez. Gomez did not specify which fiduciary duties were breached until after the court trial had concluded.

Following the court trial, in his reply to the Hurtados' proposed findings of fact and conclusions of law, Gomez specified for the first time that he was alleging a breach of the duty of loyalty. Gomez reiterated his breach of the duty of loyalty claim again in his motion to amend the district court's findings of fact and conclusions of law. Gomez also alleged for the first time, in his reply memorandum in support of his motion to amend findings of fact, that Jesus breached his fiduciary duty when he permitted JHD to use the 330 acres of Wendell Dairy farmland without paying rent to G&H. The district court rejected these arguments.

Gomez repeats these arguments on appeal. In response, the Hurtados make two preservation arguments. The Hurtados first argue that Gomez failed to preserve any argument regarding a breach of the duty of loyalty. We disagree. The district court addressed and rejected this argument in its decision on Gomez's post-trial motions. "[A] party preserves an issue for appeal if the trial court issues an adverse ruling." *State v. Miramontes*, 170 Idaho 920, 924–25, 517 P.3d 849, 853–54 (2022). The district court's decision on the issue preserved the argument for appeal. Second, the Hurtados argue that Gomez failed to preserve any argument related to Jesus's failure to pay rent for JHD's use of the 330 acres. Again, the district court considered and rejected this argument in its decision on Gomez's post-trial motions, which preserved the issue for appeal.

Turning to the merits, the district court rejected Gomez's breach of fiduciary duty arguments after concluding that a failure to comply with an unenforceable LOI was not a breach of a fiduciary duty. The district court found no evidence that the Hurtados had breached a duty to negotiate in good faith concerning the transfer of the real property associated with the Buhl and Preston dairies. Rather, it concluded that the parties had simply failed to reach an agreement on the material terms for the transfer of the real properties. The district court found no violation of the duty of loyalty for Jesus's use of the Wendell Dairy farm ground because Jesus paid rent for

the dairy facilities at the Wendell Dairy, his allocation in the final accounting was adjusted for the nonpayment of rent for the 330 acres of farmland at the Wendell Dairy, and he separately purchased the Wendell Dairy in 2021.

Our review of the district court's decision following a court trial "is limited to determining whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law." *Hood v. Poorman*, 171 Idaho 176, 186, 519 P.3d 769, 779 (2022) (quoting *Burns Concrete, Inc. v. Teton County*, 168 Idaho 442, 456, 483 P.3d 985, 999 (2020)). "Factual findings will not be set aside unless they are clearly erroneous. A factual finding is clearly erroneous if it is not supported by substantial and competent evidence." *Id.* (citations omitted). "Although there may be conflicting evidence, substantial and competent evidence exists 'if there is evidence in the record that a reasonable trier of fact could accept and rely upon in making the factual finding challenged on appeal.'" *Id.* at 187, 519 P.3d at 780 (alterations omitted) (quoting *Caldwell Land & Cattle LLC v. Johnson Thermal Sys., Inc.*, 165 Idaho 787, 795, 452 P.3d 809, 817 (2019)). "This Court 'is not bound by the legal conclusions of the trial court' and exercises free review to 'draw its own conclusions from the facts presented.'" *Id.* (quoting *Morgan v. New Sweden Irrigation Dist.*, 160 Idaho 47, 51, 368 P.3d 990, 994 (2016)). "However, this Court liberally construes a trial court's factual findings in favor of the judgment entered." *Id.*

We review the district court's decision on motions to amend findings or to amend a judgment under an abuse of discretion standard and "a judgment will not be disturbed on appeal where substantial and competent evidence is present to support the court's findings." *Belstler v. Sheler*, 151 Idaho 819, 823, 264 P.3d 926, 930 (2011).

We find no error in the district court's decision to dismiss Gomez's fiduciary duty claims. Idaho Code section 30-25-409 addresses fiduciary duties between members of a member-managed LLC. Section 30-25-409(b) outlines three duties that fall under the duty of loyalty:

> The fiduciary duty of loyalty of a member in a member-managed limited liability company includes the duties:
>
> (1) To account to the company and to hold as trustee for it any property, profit, or benefit derived by the member:
>
> > (A) In the conduct or winding up of the company's activities and affairs;
> >
> > (B) From a use by the member of the company's property; or
> >
> > (C) From the appropriation of a company opportunity;

(2) To refrain from dealing with the company in the conduct or winding up of the company's activities and affairs as or on behalf of a person having an interest adverse to the company; and

(3) To refrain from competing with the company in the conduct of the company's activities and affairs before the dissolution of the company.

I.C. § 30-25-409(b). Gomez fails to identify which duty of loyalty the Hurtado brothers violated. Instead, Gomez simply generally asserts that a fiduciary duty was violated because the Hurtado brothers refused to transfer the Buhl and Preston dairies' real property to him. As discussed above, the LOI was unenforceable. The Hurtado brothers did not breach any duty of loyalty when they declined to transfer G&H's real property pursuant to an unenforceable agreement. The district court did not err in dismissing Gomez's fiduciary duty claim.

Next, Gomez argues the duty of loyalty was breached because Jesus, through his entity JHD, farmed 330 acres of the farm ground at the Wendell Dairy rent-free and continued to possess the farm ground through 2022. However, as the district court properly concluded, Jesus's allocation was adjusted for the nonpayment of rent for the 330 acres of farm ground and Jesus eventually purchased the Wendell Dairy in 2021. Once again, Gomez fails to identify which duty of loyalty Jesus violated. Any benefit that Jesus received from the farm ground is remedied by the adjustment of his allocation in the final accounting and subsequent purchase of the Wendell Dairy property. We find no error by the district court.

Gomez also argues that the Hurtado brothers "did not act in good faith" because the brothers required the dairies to be sold at fair market value and required that "the claim of wrongdoing of Gomez had to be resolved" before transferring the dairies to Gomez. Gomez does not specify the alleged "wrongdoing" at issue, but he may be referencing the 2011 disagreement between Gomez and the Hurtado brothers over Gomez's handling of G&H's finances.

We similarly reject this argument. For the reasons previously discussed, the LOI was not an enforceable contract. Without an enforceable contract, the Hurtado brothers had no obligation to transfer the Buhl and Preston dairies to Gomez. The district court found no evidence that the Hurtado brothers had breached a duty to negotiate in good faith and determined that the parties had simply failed to reach an agreement. Gomez fails to explain how that finding was incorrect.

**C. The district court did not err in denying Gomez's quasi-estoppel claim.**

Gomez also argues that the district court erred in dismissing his quasi-estoppel claim. Quasi-estoppel is an equitable remedy. *See Hollingsworth v. Thompson*, 168 Idaho 13, 21–22, 478

P.3d 312, 320–321 (2020); *Keybank Nat'l Ass'n v. PAL I, LLC*, 155 Idaho 287, 293, 311 P.3d 299, 305 (2013); 31 C.J.S. *Estoppel and Waiver* § 146 (May 2024 update). "This Court reviews rulings on equitable remedies for an abuse of discretion." *Pickering v. Sanchez*, 173 Idaho 404, 415–16, 544 P.3d 135, 146–47 (2024) (quoting *Asher v. McMillan*, 169 Idaho 701, 705, 503 P.3d 172, 176 (2021)). Under this standard, we apply a four-part test to determine whether the trial court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

"The doctrine of quasi-estoppel prevents a party from asserting a right, to the detriment of another party, which is inconsistent with a position previously taken." *Atwood v. Smith*, 143 Idaho 110, 114, 138 P.3d 310, 314 (2006) (internal quotation marks and citation omitted). The elements of quasi-estoppel are:

> (1) the offending party took a different position than his or her original position and (2) either (a) the offending party gained an advantage or caused a disadvantage to the other party; (b) the other party was induced to change positions; or (c) it would be unconscionable to permit the offending party to maintain an inconsistent position from one he or she has already derived a benefit or acquiesced in.

*Id.* "Still, in order to state a claim for . . . quasi-estoppel, a plaintiff must at least allege, among other things, a promise or representation by the party to be estopped." *Hollingsworth*, 168 Idaho at 22, 478 P.3d at 321.

Gomez argues that the Hurtado brothers changed their position after signing the LOI because they demanded that Gomez pay fair market value for the real property associated with the Buhl and Preston dairies. Gomez also alleges that they changed their position by demanding that "Gomez had to make certain things right from the past . . . ." Gomez argues that he relied on the LOI when he agreed to sell personal assets, take on debt, and assume a significant amount of G&H's debt during the restructuring. Despite this, the real property associated with the dairies was not transferred to Gomez and he argues that this result is unconscionable. The Hurtados respond that they never changed their position that the dairy properties needed to be sold. However, the parties could not agree on a sales price and therefore the transfers did not occur.

Following the court trial, the district court determined that the first element of quasi-estoppel was not met because the LOI was unenforceable and thus no party took a legal position that later changed. The district court did not err in dismissing the claim. "Quasi-estoppel prevents

a party from changing its *legal position* and, as a result, gaining an unconscionable advantage or imposing an unconscionable disadvantage over another." *Hollingsworth*, 168 Idaho at 22–23, 478 P.3d at 321–22 (emphasis added). Here, the Hurtado brothers never took a "legal position" because the LOI was not an enforceable agreement, but instead was an offer, among several other offers, to Wells Fargo that was never accepted. In the absence of an enforceable LOI, the Hurtado brothers took no legal position that later changed.

The district court also concluded that Gomez had not met the second element of quasi-estoppel based on its factual findings that: (1) the Hurtado brothers were not offending parties but instead were business partners attempting to negotiate a way out of a financial crisis; (2) Gomez was not induced to change positions but instead was an experienced businessperson who made a financial decision that he now regrets; and (3) the Hurtado brothers did not take an inconsistent position and it was not unconscionable to allow G&H to lease the real property to Gomez instead of conveying it because Gomez was an experienced businessman and agreed to the arrangement when he signed the leases.

Gomez has not challenged these findings of fact. Instead, he argues on appeal that his situation is unconscionable because he sold assets and took on additional debt in anticipation of receiving the Buhl and Preston dairies' real property, which the Hurtado brothers then refused to transfer to him. We disagree. The LOI was unenforceable because Wells Fargo never accepted the offer contained therein. The evidence demonstrated that the Hurtado brothers and Gomez continued to negotiate with Wells Fargo. A number of draft term sheets were exchanged between the members of G&H and Wells Fargo. Eventually, the Hurtado brothers and Gomez agreed to term sheets with Wells Fargo but could not agree on a real property distribution agreement. Instead, the term sheets for Melon Valley and Daytona indicated that the entities would lease the real properties associated with the Buhl and Preston dairies from G&H. Thus, the evidence indicates that Gomez was aware that he would be leasing the real property from G&H when he closed on the restructuring.

As for Gomez's argument that it was unconscionable that he took on more debt than the other members of G&H during the restructuring with Wells Fargo, the district court concluded that, while Gomez took on greater debt and made a larger cash injection, he failed to account for the value of personal property assets he received. Again, Gomez has not challenged the district court's findings on this point. As discussed further below, we conclude that the district court did

not err in approving the final accounting and its allocations of each member's capital contributions. Given those factual findings by the district court, the district court did not err in concluding that Gomez did not meet the second element of quasi-estoppel. We affirm the district court's decision dismissing Gomez's quasi-estoppel claim.

**D. We do not consider Gomez's argument concerning his unjust enrichment claim because he failed to support it with citations to legal authority.**

Gomez also argues that the district court erred by dismissing his unjust enrichment claim. However, Gomez's opening brief fails to include a single citation to relevant legal authority in this section of his opening brief. "We will not entertain an issue that is 'not supported by any cogent argument or authority.'" *Hart v. Shepherd (In Re Contest of Election)*, 164 Idaho 102, 108, 425 P.3d 1245, 1251 (2018) (alteration omitted) (quoting *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010)). Idaho Appellate Rule 35 requires that the arguments of the parties shall contain "citations to the authorities, statutes and parts of the transcript and record relied upon." I.A.R. 35(a)(6). "[W]here an appellant fails to assert his assignments of error with particularity and to support his position with sufficient authority, those assignments of error are too indefinite to be heard by the Court. . . .  [T]o the extent that an assignment of error is not argued and supported in compliance with the [Idaho Appellate Rules], it is deemed to be waived." *Primera Beef, LLC v. Ward*, 166 Idaho 180, 184, 457 P.3d 161, 165 (2020) (quoting *Clark v. Cry Baby Foods, LLC*, 155 Idaho 182, 185, 307 P.3d 1208, 1212 (2013)). Gomez failed to properly support this argument and we therefore do not consider it.[1]

**E. The district court did not err in its final accounting and winding up of G&H.**

Following the court trial, the district court issued its written findings of fact and conclusions of law and ordered the judicial dissolution of G&H. Prior to ordering dissolution, the district court conducted a four-part analysis. First, the district court determined that dissolution was necessary because all parties sought the dissolution of G&H. Next, the district court wound up the activities and affairs of G&H. The district court largely adopted the Special Master Report's allocation of assets and liabilities but adjusted the allocation to account for some of the parties' objections and to account for transactions that were not included in the Special Master Report. The district court

---

[1] We also note that throughout his briefing on appeal, Gomez calculates damages and prejudgment interest on his respective claims. Because we find no error in the district court's decisions dismissing his claims, we do not address this aspect of Gomez's briefing.

then characterized each transaction by the members of G&H as debt or capital contributions. This characterization was crucial to determining the final allocation to each member because G&H did not have a sufficient surplus to fully refund each member's equity contributions. *See* I.C. § 30-25-707. Lastly, the district court arrived at a final accounting allocation between the members and set forth a framework to marshal and distribute G&H's remaining assets. This required the sale of the Preston Dairy, notification and payment to creditors of the dissolution, and the final dissolution of G&H.

Gomez argues that the district court erred in the accounting and winding up of G&H. Specifically, Gomez argues that: (1) Gilbert was not entitled to one-third interest in G&H; (2) dissolution of G&H had already occurred in 2013; and (3) the district court erred in its final accounting and winding up of G&H. These arguments attack factual findings by the district court. "Factual findings will not be set aside unless they are clearly erroneous. A factual finding is clearly erroneous if it is not supported by substantial and competent evidence." *Hood v. Poorman*, 171 Idaho 176, 186, 519 P.3d 769, 779 (2022) (citations omitted).

1. *We will not address Gomez's argument that Gilbert is not entitled to a one-third interest in G&H because he failed to support his argument with citations to legal authority.*

Gomez argues that Gilbert is not entitled to any interest in G&H because he dissociated from G&H under the terms of the LOI. Gomez contends that the district court's inclusion of Gilbert in the winding up decision unjustly enriched Gilbert. Gomez's opening brief fails to cite any legal authority supporting his position. Gomez also fails to cite to or grapple with Idaho Code section 30-25-602, which governs dissociation of members in an LLC. As a result, we do not address this claim. *Primera Beef*, 166 Idaho at 184–85, 457 P.3d at 165–66.

2. *The LOI is unenforceable and therefore cannot establish the date of dissolution.*

Gomez argues that the district court's accounting was erroneous because it was based on a dissolution date of 2022, when the district court issued its decision. Gomez argues that the LOI was an enforceable dissolution agreement and therefore contends that the date of dissolution should be 2013, when the parties signed the LOI. It appears Gomez's argument is based entirely on his contention that the LOI is an enforceable dissolution agreement. However, for the reasons discussed above, we hold that the LOI is unenforceable. Accordingly, we reject Gomez's argument that the district court erred because it failed to establish the date of dissolution as sometime in 2013.

3. *The district court did not err in its final accounting.*

Gomez's arguments challenging the district court's final accounting, based largely on the report of a special master, are difficult to follow. First, he appears to argue that the district court erred in its characterization of certain advances by the members of G&H. Specific transactions that Gomez takes issue with are (1) the $1.5 million cash injection he made when G&H's debt was restructured with Wells Fargo, (2) Melon Valley's and Daytona's assumption of the Wells Fargo debt, and (3) liabilities that G&H owed to Gomez's other businesses that provided services to G&H. Gomez also argues that the district court erred in its member allocations related to improvements that Gomez made to the Wendell Dairy before the formation of G&H, rent owed by Jesus for use of the Wendell farm property, and rent owed by Gomez for the Preston Dairy.

In characterizing advances by the members of G&H as either debt or equity contributions, the district court adopted, with some modifications, the Special Master Report. "The special master's findings which the court adopts are considered to be the findings of the court. The special master's conclusions of law are not binding upon the district court, although they are expected to be persuasive." *Dorsey v. Dorsey*, 172 Idaho 667, 535 P.3d 1040, 1050 (2023) (citation omitted). "To the degree that the district court adopts the special master's conclusions of law, they are also the conclusions of the court." *Id.* (citation omitted). "The district court [is] required to accept the master's findings of fact unless they [are] clearly erroneous. . . . A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous." *Id.* (alterations in original) (quoting *City of Pocatello v. State*, 152 Idaho 830, 840, 275 P.3d 845, 855 (2012)).

Gomez submitted comments and concerns to Reinstein, the court-appointed Special Master, before he finalized his report. Reinstein provided written responses to Gomez's concerns and explained the reasons for his accounting recommendations. After Reinstein filed his report with the district court, Gomez lodged objections to the report with the district court. His objections essentially repeated the same comments and concerns previously conveyed to Reinstein. The district court held a hearing on the objections and issued both an oral ruling and a written decision rejecting most of Gomez's objections, but allowed some to be further argued at trial.

Following the court trial, the district court's decision addressed and dismissed Gomez's remaining objections. The district court provided a detailed, well-reasoned seventy-nine-page findings of fact and conclusions of law in which the district court reviewed and adopted, with some

modifications, the detailed Special Master Report. The amounts that Gomez complains about are accounted for in the Special Master Report.

Gomez's arguments on appeal amount to little more than asking us to second-guess the Special Master and the district court without explaining how the district court erred. Gomez provides few record citations, no legal citations, and his arguments are difficult to follow. The district court thoughtfully considered and analyzed each of the contested items before concluding whether each amount was a debt or capital contribution. We find no error in the district court's findings and conclusions and affirm its final accounting and judgment dissolving G&H.

**F. The Hurtados are awarded attorney fees on appeal under Idaho Code section 12-121.**

Gomez requests attorney fees pursuant to Idaho Code section 12-121 for the first time in his reply brief. We deny Gomez's request both because he failed to request attorney fees in his opening brief and because he is not the prevailing party on appeal. *See* I.C. § 12-121; I.A.R. 41(a).

The Hurtados also request attorney fees on appeal pursuant to Idaho Code section 12-121. Attorney fees may be awarded to the prevailing party under section 12-121 when a "case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. "When an appellant fails to present a cogent argument as to why he should prevail, an award to his opponent is appropriate." *Millard v. Talburt*, ___ Idaho ___, ___, 544 P.3d 748, 765 (2024) (quoting *Turner v. Turner*, 155 Idaho 819, 827, 317 P.3d 716, 724 (2013)). "Idaho Code section 12-121 allows attorney fees in a civil action if the appeal merely invites the Court to second-guess the findings of the lower court." *Id*. (quoting *Erickson v. Erickson*, 171 Idaho 352, 371, 521 P.3d 1089, 1108 (2022)).

Because we affirm the district court's decision, the Hurtados are the prevailing parties on appeal. The Hurtados contend that they are entitled to an award of attorney fees because Gomez's appeal lacks cogent legal arguments as to how the district court erred, fails to provide legal or factual citations supporting his arguments, and simply asks this Court to second guess the trial court. We agree and award the Hurtados their reasonable attorney fees on appeal pursuant to section 12-121.

Gomez failed to grapple with the plain language of the LOI that the district court relied on in determining that the LOI was unenforceable. Gomez's challenges to the dismissal of his claims for unjust enrichment, quasi-estoppel, breach of fiduciary duty, and the dissolution and winding up of G&H were difficult to follow and Gomez failed to cite legal authority in support. In many

instances, Gomez failed to articulate how the district court erred or merely asked this Court to reweigh the evidence and second-guess the detailed and well-reasoned findings of fact and conclusions of law of the district court. Therefore, we conclude that his appeal was brought and pursued unreasonably and without a legal foundation.

## IV.    CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed. We award the Hurtados their reasonable attorney fees pursuant to Idaho Code section 12-121. The Hurtados are also awarded their costs on appeal pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN, Justices MOELLER and MEYER, and Pro Tem Justice BASKIN CONCUR.